**UNITED STATES of America, Appellee,**

**v.**

**Bolanle LAWAL, Appellant.**

**No. 1003, Docket 83–1405.**

United States Court of Appeals, Second Circuit.

Argued April 3, 1984.

Decided April 26, 1984.

Gavin W. Scotti, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty.,

---

E.D.N.Y., L. Kevin·Sheridan, Dennis E. Milton, Asst. U.S. Attys., Brooklyn, N.Y., of counsel), for appellee.

Robin Charlow, The Legal Aid Society, Federal Defender Services, New York City, for appellant.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge, and POLLACK, District Judge.*

MILTON POLLACK, District Judge:

Appellant Bolanle Lawal was convicted in the Eastern District of New York, after a jury trial before Judge Thomas C. Platt, on both counts of a two-count indictment charging, respectively, importation of heroin into the United States, in violation of 21 U.S.C. § 952, and possession of heroin with intent to distribute it, in violation of 21 U.S.C. § 841. He was sentenced to concurrent terms of seven years imprisonment on each count, followed by a lifetime special parole term, and fined $5,000.

Lawal's defense was that he did not know that the substance he was importing was heroin and that he was therefore not guilty of the offenses charged. He contends that the trial court committed reversible error by barring questions to a government witness concerning what Lawal said, and, in one instance, how he appeared, during a period of detention shortly after he entered the United States. According to Lawal, the answers to these questions, if allowed, would have bolstered his defense.

### FACTS

On May 11, 1983, Lawal arrived at Kennedy International Airport, in New York City, on a Nigerian Airlines flight from Lagos, Nigeria. Shortly after he cleared an initial customs inspection at the terminal, he was observed by plain-clothed United States Customs Patrol Officer Ronald Palmieri. Palmieri noticed several suspicious aspects of Lawal's appearance: he was perspiring profusely, seemed in a "big hurry" to get out of the terminal, and had a bulge in his torso area.

Lawal ignored Palmieri's initial efforts to stop him for questioning, but finally complied and gave Palmieri a Nigerian passport and his customs declaration. The latter listed a Brooklyn, New York, address as the place where Lawal would be staying in the United States. In response to initial questioning, Lawal told Palmieri that he was in some type of trading business and that he would be staying in the United States for about a day.

Lawal was then escorted to a private room for further examination. A search of Lawal's clothing and person revealed that he was carrying fourteen small packages, some in the pockets of his suit coat and vest, and many stuffed inside his shirt near his stomach. Palmieri testified that as the packages were being removed from inside his shirt, and upon being asked what they contained, Lawal said it was "nothing, nothing," and attempted to stuff a package back into his shirt. When asked again what the packages contained, Lawal said he did not know and repeated that it was "nothing." Palmieri testified that it was obvious that Lawal was smuggling simply from the way he had concealed the packages on his person. Palmieri further testified that during his detention, Lawal told the agents that a friend had given him the packages for delivery to another friend.

An examination of the fourteen packages by the customs agents revealed that some consisted of more than one packet and that there were in all twenty-one packets wrapped in opaque tape. The agents conducted on-site narcotics tests of samples of the contents of several of the packets; the results thereof did not give a positive indication for narcotics.

Special Agent Brian Noone, of the Federal Drug Enforcement Agency ("DEA"), arrived shortly thereafter and conducted additional tests on the packages. Again

---

* The Hon. Milton Pollack, Senior Judge of the United States District Court for the Southern District of New York, sitting by designation.

there was no positive reaction showing the presence of narcotics. Noone then took Lawal to the nearby DEA office at the airport. Further tests were conducted there, again without positive results. A decision was made to release Lawal. He was given his passport, open-return airline ticket, and personal effects, and allowed to leave. The packets were retained for further testing.

Before leaving the DEA office, Lawal told Noone that he was going to the La-Guardia Airport Holiday Inn. Noone asked Lawal to call when he arrived at the hotel to inform the DEA of his whereabouts. Lawal did call immediately upon his arrival to give Noone his room number. Later, Lawal telephoned again to say he was switching rooms.

Further chemical analysis conducted overnight on the contents of the packages indicated that some contained heroin. Analysis revealed that eleven of the twenty-one packets contained heroin, having in total a wholesale value of at least $50,000.

Upon learning that the packets contained heroin, a DEA agent telephoned the Holiday Inn to confirm that Lawal was still there and told Lawal that agents were coming to speak to him. Lawal waited at the hotel for them, and he was arrested.

The trial consisted primarily of the testimony of Palmieri and Noone. Lawal did not testify. From the beginning to the end of the trial, it was defense counsel's theory that Lawal was not guilty because he did not know that the packages he had carried into the United States contained narcotics. The defense of lack of knowledge—premised largely on the ground that Lawal swiftly decided to cooperate after being apprehended—was presented squarely and extensively to the jury, which rejected it by finding Lawal guilty.

## THE ISSUE

Lawal challenges evidentiary rulings made by the trial court which precluded defense counsel from asking agent Noone, on both direct and cross-examination, what Lawal had said during his detention on May 12. The specific questions to which objections were sustained are set out in the margin.[1]

Lawal contends that the answers Noone would have given to these questions would have revealed the extent of Lawal's willingness to cooperate with the agents and the fact that he was visibly angry at the person in Nigeria from whom he had received the packages.[2] According to Lawal, such ex-

---

**1.** Defense counsel was barred from obtaining from Noone answers to the following questions:

"Q And is it fair to say that you talked to him for a fairly lengthy period of time?"

"Q And is it fair to say that he was angry at another individual?"

"Q And it was at this time that he was talking to you about what occurred, isn't that correct?"

These questions, and possibly others that would have been asked but for the sustained objections, were blocked by the trial judge's ruling that "[a]s I understand the rule you cannot get the defendant's self-serving statements in through questioning the agents."

**2.** The only offer of proof made by defense counsel at trial took place in the following colloquy at the bench:

[DEFENSE COUNSEL]: The relevance, it is simply to get an understanding before the jury that in these type of cases that what often occurs is someone gives the person, whether knowingly or unknowingly, the drugs and they are delivered to someone else. And I intend to ask him and this goes to state of mind which is

why I brought it up before we came. I then intend to ask him whether it was his understanding that Mr. Lawal whereupon being released would cooperate with the D.E.A. Agency and with the investigation, specifically with Agent Noone....

Your Honor, I would at least like to ask him the question with respect to cooperation not asking him what the specifics were and not asking for self-serving statements but the fact and this goes as a state of mind exception to, therefore, self-interest is not—

THE COURT: You cannot get your man's defense in through this witness.... You have got your man in Court. He is not unavailable. He is capable of giving sworn testimony.... You may not put this man's defense in through this witness.

[DEFENSE COUNSEL]: Is there anything with respect to the fact that he even in his report indicates that there was cooperation which they—well, your Honor, will you at least permit me to go into the telephone conversation, May 11, when he told him what room number he would be staying which is already in evi-

cluded matter would have tended to demonstrate to the jury that he lacked the knowledge, necessary to his conviction,[3] that the packages contained heroin.

The trial court premised its rulings on the ground that the self-serving statements of the defendant could not be placed before the jury through the agents, but could be admitted, if at all, only through the defendant's own testimony. Defense counsel asserted at trial that the statements relating to cooperation and anger were admissible through Noone under the "state of mind" exception to the hearsay evidence rule. Fed.R.Evid. 803(3).[4]

The analysis of the merits of this challenge must involve two steps: first, was it proper under the rules of evidence for the trial court to prevent questioning of the agent concerning what the defendant said; and second, if there was error, did it rise above the threshold of *harmless* error.

The trial court's blanket ruling that Lawal's self-serving statements could not come in through the agent prevented the jury from hearing evidence from the agent that while Lawal was detained he intended to cooperate with the government agents and that he was angry at the person from whom he had received the packages. That ruling was inconsistent with this Court's recent decision interpreting Rule 803(3), *United States v. DiMaria,* 727 F.2d 265 (2d Cir.1984).

In *DiMaria,* the Court of Appeals reversed a conviction for possession of stolen and contraband cigarettes because the trial judge had not permitted the defense to introduce through an agent the defendant's

statement that "I only came here to get some cigarettes real cheap." *Id.* at 270. The defense had contended that this statement referred to bootleg, as opposed to stolen, cigarettes, "and that the statement thus tended to disprove the state of mind required for conviction...." *Id.* This type of proof was held, in *DiMaria,* to be admissible under Rule 803(3) as "a statement of what [the defendant] was thinking in the present." *Id.* at 271.

In particular, *DiMaria* held that relevant declarations which fall within the parameters of Rule 803(3) are *categorically* admissible, even if they are self-serving and made under circumstances which undermine their trustworthiness. The truth or falsity of such declarations is for the jury to determine, and their "self-serving nature" goes only to their weight. *Id.* at 271.

■ Of course, to the extent that the declarations excluded by the trial court's rulings were not statements exhibiting Lawal's then existing state of mind, but were instead statements of what he or someone else had done in the past, they would be properly excludable as inadmissible hearsay not within the terms of Rule 803(3). *See United States v. Marin,* 669 F.2d 73, 84 (2d Cir.1982); *DiMaria, supra,* 727 F.2d at 270.

■ Giving the defendant the benefit of the doubt with respect to what Noone's answers to the barred questions would have been,[5] and based upon the representations made by appellant's counsel, the only declarations by Lawal which defense counsel sought to introduce but which were not

---

dence and also informed him that the woman who was to meet him there—

THE COURT: No.

3. The offenses of which defendant was convicted have as an essential element the requirement that defendant "be aware that he possesses some controlled substance." *United States v. Morales,* 577 F.2d 769, 776 (2d Cir.1978). *See also United States v. Zapata,* 497 F.2d 95, 98 n. 7 (5th Cir. 1974).

4. Under Fed.R.Evid. 803(3), the following is not excluded by the hearsay evidence rule, "even though the declarant is available as a witness":

A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

5. As indicated above, *supra* note 4, the only indication of what Noone's excluded testimony would have been which was provided to the trial court came in colloquy at the bench.

allowed to come in under the trial court's ruling were: first, that Lawal said the reason he was going to the Holiday Inn was to meet the woman to whom the packages were to be delivered—the suggested inference apparently being that Lawal would thereafter inform on her; and second, that Lawal appeared to be, or perhaps said he was, angry at the person who had given him the packages when it was suggested to him that they might contain narcotics. Statements to this effect, reflecting Lawal's present state of mind at the time, would have been admissible under Rule 803(3).

Even though the trial court's blanket ruling may therefore have excluded properly admissible evidence on defendant's behalf, appellant has failed to show that such exclusion amounted to more than harmless error in this case.

It is indeed true that testimony concerning an accused's decision to cooperate with government agents immediately after apprehension can be important circumstantial proof bearing on his state of mind in prosecutions for possession of narcotics. *United States v. Morales*, 577 F.2d 769, 772 (2d Cir.1978) ("testimony reciting appellant's denials and her swift decision to cooperate[ ] tended to support her claim of ignorance"). It is likewise true that such circumstantial proof can be particularly important in cases in which the government relies on the presumption of guilty knowledge arising from a defendant's possession of the fruits of a crime recently after its commission. *DiMaria, supra*, 727 F.2d at 272.

In the instant case, however, there are two critical reasons why any error in the evidentiary ruling worked no prejudice upon appellant and was therefore harmless. First, the jury was fully apprised, through the unchecked testimony of the agents, of the major aspects of Lawal's purported cooperation, namely, that he

twice had waived his right to remain silent and talked "fairly extensively" with the agents; that he had informed Noone of his planned destination after release; that he had telephoned twice to DEA agents informing them of his hotel room number; and that he waited at the hotel for the agents to arrive after having been notified they were coming to talk with him.

The additional declarations excluded, namely that Lawal had told the agents he was going to meet the intended recipient of the packages at the hotel and that he was angry at someone else, were at most marginally probative on the issue of knowledge and cannot be seen as anything more than a cumulative and insignificant addition for the defense's cooperation theory.

Second, there was presented to the jury strong countervailing circumstantial proof, going well beyond the mere fact of possession, to support the government's allegation that Lawal knew he was carrying a controlled substance, including the following: his importation of something he had not declared; the highly suspicious manner in which he had secreted the fourteen packages on his person; his nervous and hurried appearance, and the fact that he was perspiring profusely as he attempted to make his way out of the airline terminal; his initial resistance to the agents' stop and search efforts; his response, when asked about the packages, that they were "nothing;" his failure to go to the address listed on his customs declaration as the place he would be staying; and his failure to provide any explanation of what he believed he was importing in the packages.**

Consequently, in light of what was in fact put before the jury, any error arising from the trial judge's evidentiary rulings was harmless, since "it is 'highly probable' that the error did not contribute to the verdict." *United States v. Corey*, 566 F.2d 429, 432 (2d Cir.1977) (*quoting Virgin Islands v. Toto*, 529 F.2d 278, 283–84 (3d

---

** From the 3500 material submitted to us by appellant, it appears that at the time of his apprehension, the defendant told the Agents that he was carrying "medicine" to be delivered against payment to him of $5,000. Apparently appellant's attorney decided not to bring this out at the trial.

Cir.1976)). See *United States v. Lyles*, 593 F.2d 182, 196 (2d Cir.) (error harmless given the overwhelming evidence of guilt), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979); *see also Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946) (nonconstitutional error harmless if it "did not influence the jury, or had but a very slight effect").

The other challenges raised by Lawal on this appeal have been considered and are uniformly without merit; they fail to suggest that any reversible error was committed below.

Affirmed.