UNITED STATES of America, Plaintiff,

v.

Michael YU, Wah Tom Lee, Ching–Yi
Cheng, Mon–Hisuing Ting, Agnes
Chin and Yut Wai Tom, Defendants.

No. CR 88–00138(1–6).

United States District Court,
E.D. New York.

Oct. 24, 1988.

Andrew J. Maloney, U.S. Atty. by Beryl Howell, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Jay Goldberg, P.C., New York City, for defendant Yu.

Gerald B. Lefcourt, P.C., New York City, for defendant Lee.

Judd Burstein, New York City, for defendant Chen.

Richard Ware Levitt, New York City, for defendant Tom.

Bernard H. Udell, Brooklyn, N.Y., for defendant Chin.

Charles D. Lavine, Forest Hills, N.Y., for defendant Ting.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Michael Yu, along with five co-defendants, was charged in a nineteen count indictment with one count of conspiracy to distribute heroin, several counts of possession with intent to distribute heroin, and several counts of importation of heroin. At the outset of the trial, Yu moved *in limine* for a ruling that would allow his attorney to elicit, during the cross-examination of a government agent, a statement Yu had made to the agent at the time of his arrest. In response to the agent's questions regarding Yu's alleged importation of large parcels into this country from Hong Kong which were confiscated by federal agents, Yu had replied "It's not my business—it's my girlfriend's business." The government objected to the admission of this statement through the testimony of the government agent on the ground that it is a self-serving hearsay statement. Yu argued that the statement is admissible as an exception to the hearsay rule pursuant to Fed.R.Evid. 803(3). This Court denied Yu's application and indicated that this opinion would follow.

In support of his motion, Yu cited *United States v. Lawal*, 736 F.2d 5 (2d Cir.1984) and *United States v. DiMaria*, 727 F.2d 265 (2d Cir.1984). In *Lawal*, the defendant was arrested at Kennedy International Airport on suspicion that he was importing narcotics. Agents confiscated packages which were concealed on the defendant's body and conducted a sample test of the substance he was carrying for traces of narcotics. None of the tests taken yielded a positive indication of narcotics. During the course of his detention, the defendant stated that he was given the packages by a friend who asked that he deliver them to another friend. The agents released the defendant but requested that he contact them when he reached the hotel at which he indicated he would be staying. The defendant complied with that request and also contacted agents a second time to inform them he was switching hotel rooms. The defendant also indicated that he would be meeting the woman to whom he was asked to deliver the packages. In the meantime, agents conducted further tests which revealed that several of the packages did in fact contain narcotics. The agents then arrested the defendant who, upon learning that the packages contained contraband, was apparently visibly angry

with the friend who asked him to make the delivery.

The trial court in *Lawal* precluded the defense counsel from questioning the agent as to the defendant's apparent anger at his friend and his willingness to cooperate with agents by keeping them apprised of his whereabouts and informing them that he would be meeting with the woman who was to receive the packages. The Second Circuit held that the trial court erred in precluding these statements as they reflected the defendant's then-existing state of mind and were thus admissible under 803(3).

Only two months prior to issuing the *Lawal* decision, the Second Circuit had addressed the same issue in *DiMaria,* 727 F.2d 265. In that case, the defendant was charged with possessing stolen cigarettes. The defense counsel attempted to elicit during the testimony of a government agent the defendant's statement "I only came here to get some cigarettes real cheap." The defendant argued that his use of the phrase "real cheap" reflected his belief that the cigarettes were bootleg cigarettes, bought in a state with a low cigarette tax, rather than stolen cigarettes. The *DiMaria* court reversed the lower court and held that the statement was admissible under 803(3) as a statement indicating the defendant's then-existing state of mind, *i.e.,* that he believed he was purchasing bootleg cigarettes.

■ Yu argued that, much like the statements in *Lawal* and *DiMaria,* his statement is admissible pursuant to 803(3) as a declaration of his "[t]hen existing mental, emotional, or physical condition." Fed. R.Evid. 803(3). Although at first blush Yu's argument appears persuasive, closer examination reveals its lack of merit. The crux of Yu's contention is that his statement evinces his intention to cooperate, which, under *Lawal,* is not barred by the hearsay rule. Yu's argument fails to take into account, however, that evidence is not necessarily admitted merely because it does not constitute hearsay. Only evidence that is relevant may be considered by the finder of fact. Fed.R.Evid. 402. It is the responsibility of the trial judge to examine the evidence being proffered and the purpose its admission would serve in order to determine whether it is pertinent to the issues being tried. Statements indicating a defendant's willingness to cooperate are not *per se* admissible. Such statements must be independently relevant if they are to be admitted into evidence.

■ In *Lawal,* the defendant's willingness to cooperate was relevant in that it tended to negate the assumption that the defendant's possession of narcotics was with knowledge of its unlawful nature. The defendant's statements in *Lawal* concerned where he could be reached, his hotel room change, and his arrangements to meet the woman who was to receive the packages. Upon hearing this testimony, a jury might question whether a person who made himself so accessible to law enforcement officials did in fact have knowledge that what he possessed was narcotics. In contrast, in the case at bar, Yu's statement "It's not my business—it's my girlfriend's business" does not negate any requisite criminal knowledge on the part of Yu. Quite the contrary, this statement more likely indicates that Yu knew what the boxes contained and was therefore attempting to disassociate himself from them. Unlike the scenario in *Lawal,* where a reasonable inference of ignorance might have been drawn from the defendant's efforts to cooperate, the only logical reading of Yu's statement is that he was familiar with the boxes and was aware of their connection to a business venture, circumstances inconsistent with, or at best inapposite to, a theory that he lacked the requisite *mens rea* to commit the crime.

■ It is important to note the distinction between a court's finding that evidence is inadmissible because it is irrelevant and exclusion of evidence based on a court's belief that it lacks credibility. Ruling on the relevancy of evidence is an entirely proper and important function of a trial court. Rendering judgments as to the credibility of evidence, however, is generally the exclusive province of finders of fact. This Court, therefore, has not considered the veracity of Yu's statement or that the statement is of a self-serving nature. Such

considerations matter only in the jury's determination as to how much weight to afford the statement. *Lawal*, 736 F.2d at 8; *DiMaria*, 727 F.2d at 271. Accepting Yu's assertion that the boxes related to his girlfriend's business and not his, and even accepting Yu's argument that this statement was made in an effort to cooperate with law enforcement officials, the Court must still examine the purpose for which the statement is offered and determine if the statement is relevant.

■ The significance of a decision to cooperate, for purposes of relevancy, lies not in the fact that cooperation was offered but in the motivation behind the decision to render such assistance. As the *Lawal* court stated, testimony concerning an accused's decision to cooperate may be relevant to establishing that he lacked the requisite knowledge to commit the crime. *Lawal* at 9. This Court finds that Yu's statement, *i.e.*, "It's my girlfriend's business", does not evince a decision to cooperate prompted by ignorance but rather demonstrates, at best, a decision to "cooperate" in order to implicate someone other than himself. This holding is not a judgment as to credibility but instead a determination as to relevancy. Although in many cases the line between assessing credibility and determining relevancy is quite fine, the trial judge must draw the line at some point to ensure that the jury is not confronted with extraneous evidence on the off chance that a given juror, in defiance of logic and common sense, might draw a favorable inference from it.

■ Of course, a statement need not be linked to a defendant's willingness to cooperate to be admissible under 803(3). Any relevant statement concerning a declarant's then-existing mental state is admissible under this rule. In *DiMaria*, the defendant argued, and the Second Circuit agreed, that the defendant's statement "I just came to buy some cigarettes real cheap" arguably reflected the defendant's then existing mental state that he believed the cigaretes to be bootleg rather than stolen. Such belief would negate the requisite mental element of the offense. In the present case, Yu's then-existing mental state was merely his belief that the boxes related to his girlfriend's business and had no connection to him. This belief does not fall within the parameters of 803(3).

■ The language of 803(3) makes clear that a hearsay statement should not be admitted as evidence of a declarant's then-existing mental state if it is a "statement of memory or belief [offered] to prove the fact remembered or believed." In *Shepard v. United States*, 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196 (1933), the Supreme Court held inadmissible the hearsay statement of the defendant's wife that "Dr. Shepard has poisoned me." The Court concluded:

> [The government] did not use the declarations by Mrs. Shepard to prove her present thoughts or feelings, or even her thoughts or feelings in the past. It used the declarations as proof of an act committed by someone else as evidence that she was dying of poison given by her husband.

209 U.S. at 104, 54 S.Ct. at 25. The Second Circuit in *Lawal* made the same point. The Second Circuit held:

> Of course, to the extent that the declarations excluded by the trial court's rulings were not statements exhibiting Lawal's then existing state of mind, but were instead statements of what he or someone else had done in the past, they would be properly excludable as inadmissible hearsay not within the terms of Rule 803(3).

*Id.* at 8 (citations omitted). Yu's statement concerns the actions of himself and his girlfriend and in that vein is much the same as the statement in *Shepard* that "Dr. Shepard has poisoned me." Therefore, Yu's statement that he believed the boxes to be part of his girlfriend's business and not his own is not admissible to establish the truth of that assertion.

For the reasons stated above, the Court precluded the admission of Yu's statement into evidence.

SO ORDERED.