James T. KELLY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8712.

Court of Appeals of Alaska.

July 8, 2005.

Margi A. Mock, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Nancy R. Simel, Assistant Attorney General, Office of Special Prosecutions and Ap-

peals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

James T. Kelly was charged with sexual abuse of a minor in the third degree[1] for having sexual contact with K.P., who was under 16 years of age, and with attempted sexual abuse of a minor in the second degree,[2] for attempting to engage in sexual intercourse with her. Kelly defended on the ground that he reasonably believed that K.P. was 16 years old or older.[3] Kelly attempted to introduce the testimony of Stephan Andrews that, on the evening that Kelly was with K.P., Kelly had stated to Andrews that he believed that K.P. was 16 years old. Kelly argued that this statement was admissible to show his state of mind at the time of the offense—that he believed that K.P. was 16 years old. Superior Court Judge Leonard R. Devaney, III excluded this statement on the ground that it was inadmissable hearsay. Kelly appeals from this ruling. We conclude that Stephan Andrews's testimony about Kelly's statement at the time of the alleged offense should have been admitted under Evidence Rule 803(3) as a statement of Kelly's state of mind at the time of the alleged offense. We conclude that the trial court's failure to admit Andrews's testimony prejudiced Kelly's ability to present his mistake-of-age defense. We accordingly reverse Kelly's conviction.

### Factual and procedural background

During the summer of 1999, K.P. accompanied her friend T.E. to the village of Emmonak. At that time, K.P. was 13 years old and T.E. was 16 years old. Around midnight, the girls arrived at the home of the defendant, James Kelly, age 19. T.E. was visiting her boyfriend Stephan Andrews, who was staying at Kelly's home. K.P. was familiar with Kel-

ly, but did not personally know him. This was K.P.'s first visit to Kelly's house.

K.P., T.E., Andrews, and Kelly listened to music in the living room. K.P. did not tell Kelly or Andrews her age, and neither asked. After visiting in the living room, T.E. and Andrews went into a bedroom. Kelly and K.P. went into a different bedroom. K.P. and Kelly sat on a bed and listened to music. Kelly touched K.P. on her breasts and legs. She asked him to stop, but he did not. Kelly removed K.P.'s pants and attempted to initiate sexual intercourse. K.P. pushed Kelly away, replaced her pants, and left the house. She then knocked on the outside window of the bedroom where T.E. and Andrews were located. K.P. told T.E. she was leaving and began walking away from the house.

Shortly thereafter, T.E. picked K.P. up with her four wheeler and the two girls went to K.P.'s sister's house. K.P. told T.E. why she left, but she did not tell her sister or anyone else in Emmonak about the incident.

T.E. died from exposure in September 1999.

In the summer of 2000, K.P. was living with Lisa Powell in Homer. During this time, K.P. told Powell of the incident with Kelly. This was the first report K.P. made about the incident, other than to T.E. Powell reported the incident to the local police and K.P. was subsequently interviewed by Trooper Roberts in May of 2000.

Following an investigation, the State charged Kelly with third-degree sexual abuse of a minor and attempted second-degree sexual abuse of a minor in the second degree. Kelly defended on the ground that he reasonably believed K.P. was 16 years of age or older. The jury deadlocked and the court declared a mistrial. At Kelly's second trial, Kelly attempted to introduce testimony from Stephan Andrews that Kelly had said, during the night in question, that he thought K.P. was 16 years old. The prosecutor objected that the statement was improper hearsay. Kelly argued that the disputed testimony was admissible to show his state of mind.

---

1. AS 11.41.438(a)(1).

2. AS 11.41.436(a)(1) and AS 11.31.100(a)(1).

3. AS 11.41.445(b).

Judge Devaney sustained the State's objection. But Judge Devaney did allow Andrews to testify that he had told the investigating troopers that he (Andrews) believed K.P. was around 16 years old when the incident took place.

Kelly did not testify. Judge Devaney concluded that Kelly had not presented sufficient evidence for him to instruct the jury on the affirmative defense of mistake of age. The jury convicted Kelly of both charges.

*Why we conclude the trial court erred in not allowing Andrews's testimony about Kelly's statement*

The issue before us is whether Judge Devaney committed reversible error when he refused to allow Andrews to testify that Kelly made a statement to him, during the evening in question, that he (Kelly) believed K.P. was 16 years old. The defense sought to admit this statement under the state of mind exception to the hearsay rule, Evidence Rule 803(3).

■ Alaska Evidence Rule 801(c) provides that "[h]earsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A defendant's out-of-court assertions of innocence are hearsay if they are offered by the defendant to prove the defendant's innocence.[4] Such a statement is therefore inadmissible unless it falls within an exception to the hearsay rule.[5]

Evidence Rule 803(3) allows admission of "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) offered to prove the declarant's present condition or future action, but not including a statement of memory or belief to prove the fact remembered or believed[.]"

■ In order for a statement to be admissible under Evidence Rule 803(3), the statement must be offered for a permissible purpose: to prove an individual's state of mind or a plan for a future action.[6] Evidence Rule 803(3) requires the proponent of the evidence to show: (1) that the statement relates to the declarant's then existing state of mind; (2) that the statement is not offered "to prove the fact remembered or believed . . .", and; (3) that the statement relates to a relevant purpose and is only offered for that purpose.[7]

*The statement related to Kelly's then existing state of mind*

■ In order for Kelly's statement that he believed that K.P. was 16 years old to be relevant, the statement had to show Kelly's state of mind at the time that his sexual contact with K.P. took place. The State argues that the record fails to show when Kelly allegedly made the disputed statements to Andrews about K.P.'s age. But the record shows that Kelly's attorney represented to the court that Andrews would testify that Kelly told him, on the night in question, that he (Kelly) believed that K.P. was 16 years old. Therefore Kelly represented that, had Andrews been allowed to testify, Andrews would have testified to Kelly's contemporaneous statement concerning his belief as to K.P.'s age.

*Kelly's statement of his belief was not offered to prove the fact believed*

In order to be admissible under the state of mind exception, the statement of memory or belief must not be offered to prove the fact remembered or believed. But in this case, Kelly did not offer the statement to show that K.P. was, in fact, 16 years old. The statement was offered to prove Kelly's state of mind at the time the statement was

---

**4.** *State v. Agoney*, 608 P.2d 762, 764 (Alaska 1980) (a defendant's self-serving statements are hearsay and cannot be admitted into evidence unless they qualify under some exception to the hearsay rule or are used for a non-hearsay purpose); *Marino v. State*, 934 P.2d 1321, 1331 (Alaska App.1997); *Stumpf v. State*, 749 P.2d 880, 899 (Alaska App.1988).

**5.** Alaska Evidence Rule 802; *Agoney*, 608 P.2d at 764.

**6.** *Wyatt v. State*, 981 P.2d 109, 113 (Alaska 1999).

**7.** *See* Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, *Federal Rules of Evidence Manual* (8th ed.2002), Rule 803, Vol. 4, pp. 803–23 to 803–29.

made—that he believed K.P. was 16 years old. Therefore Kelly's alleged statement to Andrews satisfies this requirement.

*Kelly's statement related to a relevant purpose and was offered only for that purpose*

Kelly's statement was offered to prove that he acted under a reasonable mistake of fact. If the jury concluded that Kelly reasonably believed that K.P. was 16 years of age or older and that he had undertaken reasonable measures to verify K.P.'s age, the jury was required to acquit him under the law.[8]

*General observations*

The State argues that evidence of Kelly's statement to Andrews was a self-serving, unreliable statement forbidden by cases such as *State v. Agoney.*[9] Of course it is possible that Stephan Andrews was not telling the truth about Kelly's statement. But Andrews was available for cross-examination and it was up to the jury to evaluate his testimony. It is also possible that, if Kelly made the statement, it did not reflect his true state of mind. But, as Professor Saltzburg points out in his Federal Rules of Evidence Manual, Rule 803(3) (unlike 803(6), which relates to business records) does not contain specific language excluding untrustworthy statements. Professor Saltzburg concludes that, generally, "a criminal defendant's expression of an innocent state of mind ... is subject to clear attack as to weight. The lack of sincerity in such a statement can easily be understood by the jury, so it makes little sense for the Trial Judge to exclude the evidence on trustworthiness grounds when to do so is contrary to the language of 803(3)." [10]

*Conclusion*

■ We conclude that the trial court erred in refusing to admit Andrews's testimony that, on the evening in question, Kelly stated that he believed that K.P. was 16 years of age. We conclude that exclusion of Andrews's testimony about Kelly's statement undermined Kelly's defense that he reasonably believed that K.P. was 16 years of age

or older. We accordingly conclude that Kelly was prejudiced by the trial court's failure to admit this evidence and reverse Kelly's convictions.

REVERSED.

MANNHEIMER, Judge, concurring.

I write separately to address an issue that the State raises in its brief: the question of whether a hearsay statement about the declarant's state of mind can be admissible under Evidence Rule 803(3) even though there is no proof that the statement was spontaneous.

Kelly's attorney offered to prove (through the testimony of Stephan Andrews) that, on the night in question, Kelly told Andrews that he believed that K.P. was around sixteen years old. That is, the defense attorney offered to prove that Andrews heard Kelly make a statement expressing his contemporaneous belief concerning K.P.'s age.

Under AS 11.41.445(b), Kelly had a defense to the charge of sexual abuse of a minor if he could prove that he honestly and reasonably believed that K.P. was sixteen years old or older. Proof of this defense required proof of Kelly's then-existing state of mind. Thus, Kelly's purported out-of-court statement to Andrews was relevant to this defense.

Because Kelly's out-of-court statement was being offered to prove the truth of the matter asserted in that statement (*i.e.,* to prove that Kelly in fact believed that K.P. was around sixteen years old), the out-of-court statement was hearsay. Nevertheless, because the statement concerned Kelly's contemporaneous state of mind (*i.e.,* his state of mind at the time he made the statement), Kelly's statement qualified for admission under Evidence Rule 803(3).

The State contends, however, that there is one further requirement for admissibility under Evidence Rule 803(3): that the out-of-court statement be spontaneous.

8. AS 11.41.445(b).

9. 608 P.2d 762, 764 (Alaska 1980).

10. *Id.,* Vol. 4, pp. 803–29 to 803–31.

The State relies on language from our decision in *Brannen v. State*, 798 P.2d 337 (Alaska App.1990). In *Brannen*, the defendant wished to introduce certain out-of-court statements that he made after the police began investigating him for sexually abusing a minor. These statements were apparently exculpatory (*i.e.*, denials of sexual impropriety), and Brannen claimed that they were admissible because they demonstrated his state of mind.[1] This Court rejected Brannen's "state of mind" argument with the following language:

> Evidence Rule 803(3) exempts hearsay statements that express [a then-]existing state of mind, emotion, sensation, or physical condition to prove the declarant's [contemporaneous] condition. Brannen relies on this exception. Yet Brannen's self-serving denials ... were not statements expressing a present condition, nor were they made spontaneously. Brannen had time to reflect [on what he would say] and a motive to fabricate before he made the statements.

*Brannen*, 798 P.2d at 340–41.

The above-quoted passage seemingly supports the State's argument that hearsay statements do not qualify for admission under Evidence Rule 803(3) unless the proponent of the hearsay demonstrates that the declarant spoke spontaneously, with no time to reflect.

But this portion of *Brannen* actually states two rationales for excluding the offered hearsay. First, the out-of-court statements did not qualify for admission under Rule 803(3) because they did not refer to Brannen's contemporaneous state of mind, but rather to his state of mind at a prior time. Second, the out-of-court statements were made when Brannen had had both an opportunity for reflection and a motive to misrepresent his state of mind. I conclude that this second rationale should be treated as dictum.

Although dozens of court decisions refer to "spontaneity" as the rationale for admitting hearsay under the federal and state varieties of Evidence Rule 803(3), these decisions hardly ever turn on the presence or absence

of spontaneity. Most of them can be explained on one of three bases: (1) the hearsay statement contained an assertion about the declarant's state of mind at an *earlier* time, rather than an assertion about the declarant's contemporaneous state of mind; or (2) even though the hearsay statement contained an assertion concerning the declarant's contemporaneous state of mind, the relevant issue was not the declarant's state of mind at the time the statement was made, but rather the declarant's state of mind at some earlier time; or (3) the hearsay statement was not really offered to prove the declarant's belief or memory, but rather to prove the truth of the underlying circumstance or event that the declarant claimed to believe or remember.

Indeed, when spontaneity—or, rather, lack of spontaneity—is the sole objection to admission of a hearsay statement under Evidence Rule 803(3), most courts conclude that the hearsay should be admitted under Rule 803(3) even though the statement was not spontaneous. This is the view espoused by the major commentators on evidence law: Evidence Rule 803(3) does not require proof of spontaneity.

*Brannen's* first rationale—the fact that the defendant's statement referred to his prior state of mind rather than his contemporaneous state of mind—was legally adequate, standing alone, to support this Court's ruling. Given this fact, and given the state of the law summarized in the preceding two paragraphs, I conclude that *Brannen* should not be read as imposing an additional requirement of spontaneity on hearsay that would otherwise be admissible under Evidence Rule 803(3).

*What the evidence law textbooks have to say on this issue*

As I noted above, many court decisions declare that spontaneity is a key reason why courts admit evidence of hearsay statements concerning the declarant's state of mind under Evidence Rule 803(3). If you search a legal database for "803(3)" in the same paragraph with "spontaneous" or "spontaneity",

---

1. *Brannen,* 798 P.2d at 340.

you will find dozens of these decisions. Moreover, one of the major texts on the law evidence, *McCormick on Evidence*,[2] categorizes Evidence Rule 803(3) as one of the hearsay exceptions premised on the spontaneity of the statement. *McCormick* declares that hearsay statements describing a person's own contemporaneous mental or emotional state carry a "special assurance of reliability [because of] their spontaneity and resulting probable sincerity".[3]

However, immediately after declaring that the speaker's spontaneity and resulting sincerity are the rationales for admitting this hearsay evidence, *McCormick* backtracks and says that *contemporaneousness*, and not probable sincerity, is the crucial requirement: "The guarantee of reliability is assured principally by the requirement that the statements must relate to a condition of mind or emotion existing at the time of the statement." [4]

The authors then explain that Federal Evidence Rule 803(3)—the basis of Alaska's Evidence Rule 803(3)—does *not* require proof of spontaneity or other circumstances demonstrating the speaker's sincerity:

> [S]ome formulations of [this hearsay] exception require that the statement must have been made under circumstances indicating apparent sincerity, [but] Federal Rule 803(3) imposes no such explicit condition.

*Id.*, § 274, Vol. 2, p. 217.

The *Federal Rules of Evidence Manual*[5] notes and rejects "[the] argument that state of mind statements [are admitted because they] are spontaneous".[6] The authors point out that even when a person's assertion about their own state of mind is seemingly spontaneous, "[a] spontaneity requirement does not really guarantee sincerity":

It is impossible to tell how spontaneous a state of mind statement really is, because [the statement] describes an internal event; a declarant's [description of their] "then existing" state of mind could well be the product of days of contemplation and fabrication.

*Id.*, § 803.02[4][a], Vol. 4, p. 803–23.

The *Federal Rules of Evidence Manual* acknowledges that some courts appear to have grafted a spontaneity requirement onto Rule 803(3), especially in cases involving exculpatory out-of-court statements made by criminal defendants.[7] But the authors point out that the text of Evidence Rule 803(3) does not contain a requirement of spontaneity.

The *Federal Rules of Evidence Manual* also acknowledges that there will often be "a substantial risk ... that a declarant will be able to fabricate [a statement concerning their] state of mind".[8] However, the authors note that

> while trustworthiness may be a part of the rationale for Rule 803(3), the Rule as written does not contain a provision for excluding untrustworthy statements that would otherwise [qualify for admission]—in contrast to some other hearsay exceptions such as Rule 803(6), which contains explicit language excluding untrustworthy statements. All that is required under Rule 803(3) is that the statement must be of a "then existing" state of mind.... [T]he self-serving nature of a criminal defendant's expression of an innocent state of mind ... is subject to a clear attack as to weight. The lack of sincerity in such a situation can easily be understood by the jury, so it makes little sense for the Trial Judge to exclude the statement [because of its apparent lack of trustworthiness, when] to do so is contrary to the language of Rule 803(3).

**2.** John W. Strong, Kenneth S. Broun, George E. Dix, Edward J. Imwinkelried, D.H. Kaye, Robert P. Mosteller, & E.F. Roberts, *McCormick on Evidence* (5th ed.1999).

**3.** *Id.*, § 274, Vol. 2, p. 217.

**4.** *Id.*

**5.** Stephen A. Saltzburg, Michael M. Martin, & Daniel J. Capra, *Federal Rules of Evidence Manual* (8th ed.2002).

**6.** *Id.*, § 803.02[4][a], Vol. 4, p. 803–23.

**7.** *Id.*, § 803.02[4][d], Vol. 4, p. 803–30 & n. 41.

**8.** *Id.*, § 803.02[4][d], Vol. 4, pp. 803–29 to 803–30.

*Id.,* § 803.02[4][d], Vol. 4, pp. 803–30 to 803–31.

The authors conclude that juries, not judges, should assess the declarant's potential motive and opportunity to fabricate. In other words, the hearsay should be admitted, and the parties can then argue its credibility or lack of credibility.[9]

A third text on the law of evidence, *Federal Practice and Procedure,*[10] notes that some courts and commentators have suggested that trial judges could employ Evidence Rule 403 to exclude hearsay that would otherwise be admissible under Rule 803(3) if the circumstances of the out-of-court statement—in particular, the declarant's motive to falsify—indicate that the statement was made in bad faith. The author of *Federal Practice and Procedure* concedes that this issue "has yet to be firmly decided" by the federal courts, but he concludes that it is probably impermissible for courts to exclude hearsay under Rule 803(3) based on the judge's perception that the out-of-court statement should not be trusted.[11] The author explains:

> The difficulty is that any consideration of bad faith would require the judge to assess the sincerity of the out of court declarant and sometimes the in court witness, a function reserved to the trier of fact. [Normally, when] applying Rule 403, the trial judge [is] told ... to assume that the evidence is trustworthy in evaluating [its] probative value[,] and not to evaluate [the] credibility [of the evidence]. *See United States v. Arango–Correa,* 851 F.2d 54 (2d Cir.1988). The suggestion that "bad faith" may be considered is obviously contrary [to this normal rule].... Instead, the [potential] self-serving nature of [the] statement is considered [by the jury] when [it] weighs the evidence at the conclusion of the trial.

*Id.,* § 7044, Vol. 30B, p. 341 n. 16.

In fact, the Advisory Committee that drafted Federal Evidence Rule 803(3) declined to follow earlier formulations of the rule that required the proponent of the evidence to prove the declarant's lack of bad faith. According to *Federal Practice and Procedure,* "the Advisory Committee felt that [the declarant's] good or bad faith essentially bears on credibility and is a matter for the jury".[12]

Moreover, the author of *Federal Practice and Procedure* agrees with the authors of the *Federal Rules of Evidence Manual* that, although many court decisions cite the declarant's bad faith or the declarant's motive to fabricate as the rationale for excluding hearsay under Rule 803(3), a large number of these decisions do not actually involve hearsay that would otherwise be admissible under Rule 803(3). The hearsay in these cases was offered, not to prove the declarant's state of mind, but rather to prove the truth of the event or circumstance purportedly remembered or believed—a purpose that is impermissible under Rule 803(3).[13]

This same issue—the effect of the speaker's motive to fabricate on the admissibility of hearsay under Rule 803(3)—is discussed in *McCormick on Evidence* as well.[14] The authors of *McCormick* note that the federal courts are seemingly in conflict as to whether a judge has the authority to exclude hearsay statements offered under Evidence Rule 803(3) if the judge believes that the declarant had a questionable motive for making the statement. However, the authors conclude that this conflict is more apparent than real—that many of the court decisions which exclude the offered hearsay can be explained by the fact that the disputed evidence did not meet the normal requirements for admission under Rule 803(3) or, if the disputed evidence was admissible under Rule 803(3), the fact that the declarant's state of mind was not relevant.[15]

---

**9.** *Id.,* § 803.02[4][d], Vol. 4, pp. 803–30 to 803–31.

**10.** Michael H. Graham, *Federal Practice and Procedure* (Interim ed.2000), "Federal Rules of Evidence".

**11.** *Id.,* § 7044, Vol. 30B, pp. 340–41.

**12.** *Id.,* § 7044, Vol. 30B, p. 340 n. 15.

**13.** *Id.,* Vol. 30B, pp. 342–43 n. 15.

**14.** *McCormick,* § 274, Vol. 2, pp. 217–18 n. 8.

**15.** *Id.*

The authors of *McCormick* conclude that, "[a]lthough uncertainty remains", the principles that govern the admission of hearsay under Evidence Rule 803(3) are clear. First, the fact that an out-of-court statement may be "self-serving" does not exclude it from admission under Evidence Rule 803(3).[16] Second, trial judges are not empowered to exclude hearsay statements because of the judge's doubts as to the credibility of the statement, unless the particular evidence rule at issue expressly authorizes the judge to weigh the credibility of the statement—which Rule 803(3) does not.[17] Third, speakers' statements about their state of mind can potentially be excluded under Evidence Rule 403 if, owing to the occurrence of intervening circumstances, the statement has lost relevance because the speaker's current state of mind can not easily be attributed to the relevant time in the past.[18]

*The case law on the purported requirement of spontaneity or lack of reflection*

As noted in the *Federal Rules of Evidence Manual,* some courts appear to have grafted a spontaneity requirement onto Evidence Rule 803(3). *See United States v. Reyes,* 239 F.3d 722 (5th Cir.2001), and *United States v. Faust,* 850 F.2d 575 (9th Cir.1988). However, most of the cases cited in the *Federal Rules of Evidence Manual* demonstrate that courts do not insist on spontaneity as a requirement for admission of a statement under Evidence Rule 803(3).

For instance, in *United States v. Lawal,*[19] the defendant was arrested after drugs were found in his luggage during a customs search. When the drugs were found, the defendant made statements indicating his willingness to co-operate with the authorities and declaring his anger at being "set up".[20] The trial judge ruled that the defendant was not entitled to present this hearsay evidence because it was "self-serving", but the appellate court held that these statements were admissible under Evidence Rule 803(3), despite the obvious possibility of fabrication.[21]

Similarly, in *United States v. Partyka,*[22] a defendant was charged with dealing drugs, and he defended by asserting that he had been entrapped by a government informer. The defense attorney attempted to present hearsay testimony describing a conversation between the defendant and the informer, in which (according to the offer of proof) the defendant repeatedly declared his unwillingness to engage in drug dealing, but finally acceded when the informer reminded him of all the favors the informer had done for the defendant's family when the defendant was in prison.[23] The trial judge rejected this evidence on the ground that it was self-serving hearsay, but the appellate court concluded that Rule 803(3) mandated admission of the evidence. The appellate court noted that the proposed evidence did not consist of "declarations about [the defendant's] past attitude or state of mind"; rather, it consisted of "manifestations of his present [*i.e.,* contemporaneous] state of mind".[24]

Another example is found in *United States v. DiMaria,*[25] where the defendant was on trial for possession of stolen and contraband cigarettes, and for conspiracy. The trial judge prevented the defendant from introducing the statement he made at the time of his arrest, "I only came here to get some cigarettes real cheap."[26] The appellate court concluded that this ruling was error: the offered statement described the defendant's contemporaneous state of mind, it was relevant, and it was therefore admissible under Evidence Rule 803(3) despite the defen-

---

16. *Id.*

17. *Id.*

18. *Id.*

19. 736 F.2d 5 (2nd Cir.1984).

20. *Lawal,* 736 F.2d at 7.

21. *Id.,* 736 F.2d at 8–9.

22. 561 F.2d 118 (8th Cir.1977).

23. *Partyka,* 561 F.2d at 121, 125.

24. *Id.,* 561 F.2d at 125.

25. 727 F.2d 265 (2nd Cir.1984).

26. *DiMaria,* 727 F.2d at 270.

dant's obvious motive to fabricate.[27] In answer to the government's contention that the defendant's statement was "classic false exculpatory statement", the appellate court replied, "False it may well have been[,] but ... it fell within Rule 803(3), ... [and] its truth or falsity was for the jury to determine." [28]

In *United States v. Giles*,[29] the court concluded that the trial judge erred in excluding the defendant's exculpatory statements concerning his contemporaneous state of mind. The government argued that the defendant's statements were the product of reflection— "an attempt to cover his tracks in case he got caught".[30] The appellate court ruled that this was an argument for the jury, not a proper ground for excluding the evidence if it otherwise satisfied the requirements of Evidence Rule 803(3).[31]

Similarly, in *United States v. Wright*,[32] the court held that a statement made by a kidnapper to the victim, offered in support of the kidnapper's defense of duress, should have been admitted under Rule 803(3) even though the statement was "self-serving".[33]

In addition, several of the court decisions which purport to insist on the spontaneity of the statement, or the declarant's lack of time to reflect, can actually be explained as straightforward applications of Rule 803(3) as it is written, without the additional requirement of spontaneity.

For instance, in both *United States v. Cunningham*, 194 F.3d 1186, 1199 (11th Cir. 1999), and *United States v. Sayakhom*, 186 F.3d 928, 937 (9th Cir.1999), the defendant's exculpatory assertion about their mental state was not admissible under Rule 803(3) because the statement was not really offered to prove the defendant's state of mind, but rather to prove the truth of what the defendant asserted they believed.

Similarly, in *United States v. Bishop*, 264 F.3d 535, 549 (5th Cir.2001), the out-of-court statement was not admissible because the primary relevance of the evidence was not to establish the defendant's contemporaneous state of mind (a purpose that Rule 803(3) allows), but rather to establish the defendant's state of mind at a *prior* time—a purpose that Rule 803(3) does not allow.

*Alaska cases since Brannen*

As I have explained above, criminal cases that raise issues under Evidence Rule 803(3) often involve situations where defendants seek to introduce their own out-of-court statements because, in these statements, they assert their innocence or they deny either the conduct or the culpable mental state that is an element of the crime charged against them. Statements of this sort are excluded by Evidence Rule 803(3)—not because of the defendant's motive to fabricate, and not because of the defendant's opportunity to reflect on what to say, but rather because (1) the defendant's statement is an assertion about their mental state at an earlier time, not their mental state contemporaneous with the making of the statement, or (2) the issue in dispute is the defendant's mental state at an earlier time, and the defendant's mental state at the time of the statement has little or no relevance, or (3) the real purpose of the offered hearsay is to establish the truth of the prior event or circumstance that the defendant claims to remember or believe. All of these are independent bases for refusing to allow the evidence under Rule 803(3), regardless of the statement's spontaneity or lack thereof.

This Court has already explained why hearsay should be rejected under Evidence Rule 803(3) if the true purpose of the defendant's out-of-court statement is not to prove the defendant's belief, but rather to prove the truth of what the defendant claims to believe:

> [Evidence] Rule 803(3) does not allow hearsay testimony about a person's belief when that testimony is being offered to

---

**27.** *Id.*, 727 F.2d at 271–72.

**28.** *Id.* at 271.

**29.** 246 F.3d 966 (7th Cir.2001).

**30.** *Giles*, 246 F.3d at 974.

**31.** *Id.*

**32.** 783 F.2d 1091 (D.C.Cir.1986).

**33.** *Wright*, 783 F.2d at 1099.

prove that the belief was accurate or true. More specifically, Rule 803(3) would not authorize [a defendant] to introduce hearsay testimony that he asserted his innocence if the only relevance of this testimony was to suggest (1) that [the defendant] was being honest when he asserted that he believed himself innocent of the crimes, and (2) that [the defendant] would not believe himself to be innocent unless he was in fact innocent.

*Marino v. State*, 934 P.2d 1321, 1331 (Alaska App.1997).

In Kelly's case, however, we are presented with a situation in which hearsay evidence *was* properly offered under Rule 803(3). According to the defense attorney's offer of proof, Kelly's statement described his mental state at the time the statement was made (not his mental state at some earlier time), and Kelly's mental state at that time was relevant to the decision of his case—because Alaska law provides a "good-faith mistake of age" defense to a charge of sexual abuse of a minor.

This Court has never authoritatively construed the passage from *Brannen* that apparently imposes a requirement of spontaneity on hearsay offered under Evidence Rule 803(3). However, I note that the author of *Brannen*, Judge Alexander Bryner, later disavowed the suggestion that Rule 803(3) requires proof of spontaneity or lack of time to reflect.

In *Woodard v. State* (unpublished), Alaska App. Memorandum Opinion No. 3933 (December 9, 1998), 1998 WL 849246, one of the issues raised on appeal was whether the trial judge should have allowed the defense to present evidence of exculpatory statements made by the defendant—statements made to a police informant during several conversations in which the informant was wearing a recording device. In these conversations, the police informant repeatedly asserted that Woodard was a participant in a robbery and murder. Woodard responded by declaring

that he did not know what the informant was talking about, and that he could not imagine why the informant was accusing him of these crimes.[34]

Relying on *Brannen*, the trial judge ruled that Woodard's statements were not admissible under Evidence Rule 803(3) because, at the time of the statements, Woodard had both a motive to fabricate and a prior opportunity to reflect on what he would say if he was ever accused of complicity in these crimes.[35]

Both Judge Bryner and I concluded that the trial judge committed error when she excluded this evidence, although I concluded that the error was harmless, while Judge Bryner believed that it required reversal of Woodard's conviction.[36]

A portion of Judge Bryner's dissent echoes the analyses of the three evidence law textbooks that I have already discussed. He wrote:

[It is not] proper to justify excluding the disputed recordings as fabricated or unreliable—the rationale relied on by the state to argue that these recordings could not be admitted under the "state-of-mind" exception to the hearsay rule. [Alaska Evidence Rule] 803(3). The express terms of the state-of-mind exception do not contemplate judicial screening to ensure reliability and do not limit admissibility to statements made under particularly reliable circumstances. *Compare* . . . [Evidence Rule] 803(2) (excited utterance admissible only if "made while the declarant was under the stress of excitement caused by the event or condition").

. . .

Nothing in *Brannen v. State* . . . calls for a contrary conclusion. . . . [T]hat case is readily distinguishable. It dealt with detailed, self-serving exculpatory statements that Brannen offered for the osten-

**34.** *Woodard*, Memorandum Opinion No. 3933 at pp. 30–32; 1998 WL 849246 at *14–15.

**35.** *Id.*, Memorandum Opinion No. 3933 at p. 33, 1998 WL 849246 at *16.

**36.** Compare the discussion of this issue in my concurrence, Memorandum Opinion No. 3933 at pp. 62–69, 1998 WL 849246 at *29–33, with the corresponding discussion in Judge Bryner's dissent, Memorandum Opinion No. 3933 at pp. 113–122, 1998 WL 849246 at *53–57.

sible purpose of proving what [his] state of mind was on a later occasion. . . .

. . .

We [noted] that . . . Brannen's initial statements did not fall within the state-of-mind exception, because they . . . "were not statements expressing a present condition, nor were they made spontaneously. Brannen had time to reflect and a motive to fabricate before he made the statements." *Brannen,* 798 P.2d at 340–41. Our conclusion thus obviously centered on the fact that Brannen's statements, . . . when he . . . made them, did not purport to describe his then-existing state of mind, as required by [Evidence Rule] 803(3); instead, they described an event that had occurred in the past. Statements of this kind fall outside the express terms of [Rule] 803(3). . . .

To be sure, virtually any ostensibly spontaneous statement of a present sense impression may be the product of reflection and may describe a fictive state of mind. But the state-of-mind exception, as written in [Rule] 803(3), categorically allows the admission of such statements because they are generally reliable and because case-specific circumstances potentially rendering them unreliable are relatively easy for parties to prove and for juries to understand and evaluate. Woodard's statements were neither cate-gorically less spontaneous nor categorically more vulnerable to fabrication than any other type of statement qualifying under [Evidence Rule] 803(3).

*Woodard,* Memorandum Opinion No. 3933 at pp. 120–21, 1998 WL 849246 at *55–56 (Bryner, C.J., dissenting).

*My conclusion*

As I have explained here, the better-considered interpretation of Evidence Rule 803(3) is that it does not require proof of the speaker's spontaneity or the speaker's lack of opportunity or motive to fabricate. Moreover, this Court's decision in *Brannen* is independently justifiable by the fact that the hearsay statements at issue did not refer to the defendant's contemporaneous state of mind, but rather to his state of mind at a prior time.

I therefore conclude that, to the extent the *Brannen* decision suggests that Evidence Rule 803(3) requires proof of the speaker's spontaneity or lack of opportunity for reflection, this portion of *Brannen* should be treated as dictum.