UNITED STATES of America, Appellee,

v.

**Stanley A. PARTYKA, Appellant.**

**No. 77–1078.**

United States Court of Appeals, Eighth Circuit.

Submitted April 11, 1977.

Decided Aug. 2, 1977.

Rehearing and Rehearing En Banc Denied Aug. 25, 1977.

Ronald I. Meshbesher, Meshbesher, Singer & Spence, Minneapolis, Minn., for appellant; Carol Grant, Minneapolis, Minn., on the brief.

Ann D. Montgomery, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, former U. S. Atty., Andrew W. Danielson, U. S. Atty., Minneapolis, Minn., on brief.

Before LAY and HENLEY, Circuit Judges, and NANGLE, District Judge.*

HENLEY, Circuit Judge.

Stanley A. Partyka, hereinafter called defendant, was convicted in the United States District Court for the District of Minnesota on a one-count indictment charging that on November 14, 1975 he had unlawfully distributed a quantity of 3, 4-methylene-dimethoxy-amphetamine, also known as MDA, a Schedule I controlled narcotic substance, in violation of 21 U.S.C. § 841(a)(1), and on a one-count information charging that on December 23, 1975 the defendant knowingly and intentionally had in his possession 4414

* The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri, sitting by designation.

tablets of phencyclidin, also known as PCP, in violation of 21 U.S.C. § 844.[1]

As will appear more clearly, the distribution charge had been docketed in the district court as No. Cr 4–76–128, and the possession charge was included in a predecessor case which had been docketed as No. Cr 4–76–26. For convenience we will refer to the distribution case as No. 128 and to the possession case as No. 26. After the indictment in No. 128 was returned on November 22, 1976 and after the information had been filed in No. 26 on November 30, 1976 the district court[2] overruled a defense motion to dismiss the indictment in No. 128 and consolidated the two cases for trial.

The cases were tried in March, 1976, and the defendant was found guilty in both cases. In No. 128 the defendant was sentenced to imprisonment for four years to be followed by a special parole term of five years; in No. 26 the defendant was sentenced to imprisonment for one year. It was stipulated that the sentences were to be served consecutively.

A post-trial motion for judgments of acquittal notwithstanding the verdicts of the jury, or, in the alternative, for a new trial, was filed and overruled, and in that connection Judge Larson filed what amounted to a short memorandum opinion dealing with the motion.

In the distribution case the defense at the trial was that the defendant had been unlawfully entrapped by Calvin Faircloth, a government informer, into selling the MDA to Special Agent Tomcik of the federal Drug Enforcement Administration. The defense in the possession case was that Faircloth, in order to curry favor with the government, had concealed the PCP in the trunk of defendant's car without the defendant's knowledge or consent. At the trial of the case the defendant testified in his own behalf and called a number of witnesses, including his wife.

In its case in chief the government called Tomcik and other witnesses to the stand, and it called Faircloth as a witness in rebuttal.

The district court submitted the issues in the cases, including entrapment, to the jury on instructions that we consider to have fully and fairly stated the applicable law.

The defendant does not question the sufficiency of the evidence to convict him in either case, and, naturally, his principal complaint is about his conviction on the felony charge embraced in No. 128. For reversal the defendant contends principally that there was an unconstitutional delay between his distribution of the MDA on November 14, 1975 and his indictment for that offense on November 22, 1976; that the return of the indictment in No. 128 was the result of prosecutorial vindictiveness amounting to a denial of due process of law under the principles laid down in *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); that the district court erred in refusing to permit defendant's wife to testify with respect to a portion of a conversation between the defendant and Faircloth that supposedly took place in defendant's home about November 12, 1975, and which she overheard; and that the Assistant United States Attorney in the course of the closing arguments made certain statements so improper and prejudicial as to call for a mistrial by the district court or for a reversal by this court. Other contentions advanced by the defendant have been considered by us and found to be without merit.

Apart from the ultimate factual issues in the case which the jury was called upon to resolve, the facts are essentially undisputed.

Defendant is married, and he and his wife have one child; the family resides in Minneapolis or a suburb thereof. For about two years prior to 1975 defendant and his wife and Faircloth and his wife were good friends.

In 1973 the defendant was arrested and charged in Colorado with having unlawfully conspired to possess about 500 pounds of

---

1. A violation of § 841(a)(1) is a felony; a violation of § 844 is a misdemeanor.

2. The Honorable Earl R. Larson, United States District Judge.

marijuana in violation of state law. He pleaded guilty and was sentenced to imprisonment; he served a portion of his term and then was released on parole, and returned to his wife and child in Minnesota.

Faircloth was a known dealer in drugs, and prior to November, 1975 he and his wife had been arrested on federal charges, and his wife had been sentenced to imprisonment. In that month charges were still pending against Faircloth, and in the hope of leniency he agreed to cooperate with the government as an informer.

Government agents had information that the defendant was dealing in drugs, including MDA, and instructed Faircloth to undertake to arrange for the defendant to make a sale of that substance to Special Agent Tomcik. Faircloth succeeded in inducing the defendant to make the sale on November 14, and Tomcik paid the defendant $750.00 for the material. However, the defendant was not arrested or charged with that offense at the time.

The defendant testified that Faircloth first contacted him about selling MDA to Tomcik at the defendant's home about November 12, 1975; that he and Faircloth had a conversation which was overheard by defendant's brother-in-law, Michael Skunberg, and was also overheard in part by defendant's wife. Defendant's version of the conversation was that he told Faircloth that he was unwilling to engage in the transaction and maintained his position in spite of importunities on the part of Faircloth. He further testified that on November 14 Faircloth contacted him again and urged him to make the delivery; the defendant stated that when he renewed his objections Faircloth reminded him of favors done for the defendant's family while the defendant was in prison, and that the defendant finally agreed to make the delivery and did make it.

■ Faircloth, testifying in rebuttal, indicated that the defendant was at all times ready and willing to make the sale to Tomcik and needed no urging to do so. The question of whether defendant was predisposed to make the sale and was a willing participant in the transaction or whether he was entrapped was for the jury.

In late December, 1975 Faircloth supplied the agents with information that the defendant had a large quantity of PCP in the trunk of his car; the agents were able to obtain a search warrant which they executed. They found in the trunk of the car the quantity of PCP mentioned in the information in No. 26. The defendant was immediately arrested, and his car was seized. On February 23, 1976 the grand jury returned an original felony indictment in No. 26. That indictment charged the defendant with unlawful possession of the PCP with intent to distribute it.

On March 19 the defendant was arraigned and pleaded not guilty. He was allowed time within which to file motions, and on March 31 he filed a motion to suppress evidence. On April 1, 1976 Skunberg, who has been mentioned, was killed in an automobile accident.

The motion to suppress was heard on April 12 and was denied on April 13 by Judge Larson. Jury trial began on April 22, 1976. The defendant was found not guilty of the felony charge but was convicted of the lesser included misdemeanor offense of simple possession of the PCP but without intent to distribute it.

He was sentenced to imprisonment for one year, and he appealed to this court contending that the district court erred when it refused to require a government agent who was testifying at the trial to identify the person (Faircloth) who had told him that PCP was to be found in the defendant's car. In objecting to the question that had been asked, the government was undertaking to protect its informer from identification, and the district court was evidently of the view that the government's position was well taken. At the time of the trial Faircloth had been sentenced to imprisonment and was confined in the Federal Correctional Institution at Sandstone, Minnesota; that fact was known to the defendant, and the defendant may have suspected or surmised that Faircloth was the person who had informed against him.

This court disagreed with the district court and held that in view of the purpose for which defense counsel's question had been put to the government agent, the agent should have been required to answer the question and in so doing to identify Faircloth, who, as a matter of fact, was identified in the opinion of the court. On November 10, 1976 this court handed down its opinion reversing the district court and remanding the misdemeanor charge for a new trial. *United States v. Partyka*, 544 F.2d 345 (8th Cir. 1976). The defendant, of course, could not be retried on the felony charge set out in the original indictment in No. 26.

On November 22, 1976 the government procured the indictment in No. 128 based on the November, 1975 distribution. The government evidently desired to bring into focus the lesser included misdemeanor charge which had survived for retrial in No. 26. To that end the government on November 30 filed an information charging the defendant with simple possession of the PCP tablets. That information was not filed as a new case and simply superseded the indictment in No. 26. The government did not want to try the two cases together apparently being afraid that the second jury would take the same course as had the first jury and would acquit the defendant on the felony charge in No. 128 while convicting him of the surviving misdemeanor offense charged in No. 26. However, as stated, the district court consolidated the two cases.

*I. Preindictment Delay.*

The defendant contends that irrespective of the motive of the government in indicting him in November, 1976 for the November, 1975 sale of MDA to Tomcik, the delay between the date of the commission of the offense and the date of the return of the indictment in No. 128 was unreasonable and prejudicial and amounted to a denial of due process of law. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The government contends that the delay was due to nothing but a legitimate

desire on the part of the government to protect its informer and that it was not prejudicial.

■ It is well settled by now that before a defendant is entitled to have an indictment dismissed for preindictment delay it must appear that the delay was unreasonable and that it was prejudicial to the defendant in the presentation of his defense. *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), reversing the decision of a divided panel of this court in *United States v. Lovasco*, 532 F.2d 59 (8th Cir. 1976). *See also United States v. Costanza*, 549 F.2d 1126 (8th Cir. 1977); and *United States v. Naftalin*, 534 F.2d 770 (8th Cir. 1976).

In *Lovasco, supra,* the Supreme Court held in substance that where a defendant has been prejudiced as a result of preindictment delay, the prejudice makes ripe for consideration his claim that the delay has deprived him of due process of law, but that a defendant is not automatically entitled to have the indictment against him dismissed merely because he has been prejudiced to some extent by the delay in the return of the indictment. Regard must also be had to the reason for the delay. And the Supreme Court recognized that there is a difference between a legitimate reason for a delay in prosecution and a malevolent reason such as a desire on the part of the prosecution to gain a tactical advantage over a defendant or to hamper him in his defense. Also recognized was the proposition that an immediate prosecution of a criminal charge, even in a case in which investigation has been completed, is not always in the public interest or in the interest of the defendant, for that matter.

■ In denying the defendant's motion to dismiss the indictment in No. 128 the district court found that the delay was due to a legitimate consideration and was not prejudicial. We agree.

We take up, first, the question of prejudice. The only prejudice claimed by the defendant is that the death of Skunberg deprived him of the testimony of that indi-

vidual with respect to the conversation that the defendant claims took place between himself and Faircloth on November 12, 1975, two days before the sale of the MDA to Tomcik.

Laying to one side the consideration that no one knows what Skunberg would have testified had he lived and been called to the stand, the fatal weakness of defendant's claim of prejudice is that it is clear from a practical standpoint that due to Skunberg's death on April 1, 1975 he would not have been available to testify at the trial of No. 26 in late April of that year, and the defendant would not have had the benefit of his testimony at that trial even if the distribution charge had been combined with the possession with intent to distribute charge set out in the indictment in that case. The period that elapsed between February 23, 1976, when the original indictment was returned, and the death of Skunberg was five calendar weeks and three days, including the date of the death. It is completely unrealistic to suppose that a criminal case based on an indictment containing not one but two serious felony charges could have been made ready, from the standpoint of either side, and called to trial within that short a period of time in the Fourth Division of the United States District Court for the District of Minnesota. And, as has been observed, defendant's motion to suppress evidence in No. 26 was not filed until March 31, 1976, the day before Skunberg's death.

Assuming prejudice, however, we do not think that the preindictment delay involved a denial of due process of law.

We reject the contention of the defendant that the delay in the return of the indictment in No. 128 was improperly motivated. It is clear to us, and the district court found, that the government understandably desired to protect its informer; that the government felt that it had a strong case against the defendant based on his possession of PCP with alleged intent to distribute, and felt that the case could be submitted without identifying the informer. In those circumstances the initial decision of the government was not to "delay" the prosecution of the defendant on the distribution charge, but not to prosecute him on that charge. And had this court affirmed the defendant's misdemeanor conviction in No. 26 the indictment in No. 128 might never have been sought. With the decision of this court in November, 1976, the reason for foregoing prosecution on the distribution charge disappeared, and the defendant was promptly indicted and put to trial on that charge along with what survived of the charge incorporated in the indictment in No. 26.

We see nothing improper, unreasonable, unfair or underhanded in the course of action that the government took.

## II. Prosecutorial Vindictiveness.

Apart from any question of preindictment delay, the defendant argues that the prosecution of No. 128 in 1976 after defendant's initial conviction in No. 26 had been reversed amounted to prosecutorial vindictiveness prohibited by the due process clause of the fifth amendment. The defendant correctly points out that in February, 1976, when the original indictment in No. 26 was returned, the government's distribution case against the defendant was complete, and that the distribution charge could have been included in the prosecution that was commenced as No. 26. And the defendant contends that he was indicted in No. 128 simply to punish him for having successfully appealed his misdemeanor conviction in the older case.

Our characterization of the conduct of the government in connection with defendant's claim of preindictment delay also leads us to reject defendant's prosecutorial vindictiveness claim which is based principally on *Blackledge v. Perry, supra.*

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that the vindictive imposition of harsher subsequent sentences on defendants whose original sentences had been set aside as a result of appeals or otherwise is a violation of due process of law.

In *Perry* the Supreme Court recognized that the possibilities for vindictiveness inherent in the sentencing powers of judges extend to the charging powers of prosecutors. And it was held in substance that it is unconstitutional for a prosecutor to launch a vindictive subsequent prosecution against a defendant who has invoked or is about to invoke a protected procedural right for the purpose of punishing him for having exercised that right or of deterring him from exercising it or pursuing it. And the Court held that it need not necessarily appear that the vindictive prosecution was instituted on account of malice or ill will toward the particular defendant involved.[3]

But, we do not read *Perry* as taking away from prosecutors their traditional and proper discretion in deciding which of multiple possible charges against a defendant are to be prosecuted or whether they are all to be prosecuted at the same time. *Cf. United States v. Crow Dog,* 532 F.2d 1182, 1195–96 (8th Cir. 1976), and cases cited. *See also United States v. Lovasco, supra,* 431 U.S. at 794, 97 S.Ct. at 2051, n. 15.

In other words, we do not think that *Perry* holds that if at a given moment a prosecutor is in a position to indict a defendant on two separate felony charges growing out of different events he must indict on both charges at the same time unless he cares to assume the risk that if a prosecution on one charge only aborts as a result of defense efforts, it will be held that he has been guilty of vindictive prosecution if he promptly obtains an indictment on the other charge. The result of such a reading of *Perry* would be that the prosecutor would probably proceed on both charges where one might have sufficed, and the defendant would be faced with the possibility of two felony convictions instead of one. And that could easily have happened in the case of this defendant.[4]

If it be assumed that in some cases in which a successful defense maneuver is met by the filing of additional charges challenged as vindictive, the prosecution may have a duty to negative the idea of vindictiveness, we think that any such duty was discharged here.

The defense asserts that the only reason why the indictment in No. 128 was procured was that the defendant had succeeded in reversing his misdemeanor conviction in No. 26. That statement is correct only up to a point. In our view, the indictment in No. 128 was procured not merely because the conviction in No. 26 had been reversed but because the collateral effect of the reversal was to disclose the identity of Faircloth as the government's informer and thus remove the government's valid reason for not indicting the defendant on the distribution charge when it originally indicted him on the possession charge.

In rejecting the claim of pre-indictment delay we said that we saw nothing improper, unreasonable, unfair or underhanded in the action that the government took; and we will now add that we see nothing vindictive in it.

---

3. Since *Perry* was decided in 1974 it has been cited in numerous reported decisions of both the courts of appeals and the district courts. We mention the following cases: *Martinez v. Estelle,* 527 F.2d 1330 (5th Cir. 1976); *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976); *United States v. Preciado-Gomez,* 529 F.2d 935 (9th Cir.), *cert. denied,* 425 U.S. 953, 96 S.Ct. 1730, 48 L.Ed.2d 197 (1976); *United States v. Anderson,* 514 F.2d 583 (7th Cir. 1975); *United States v. Jamison,* 164 U.S.App. D.C. 300, 505 F.2d 407 (1974). A pre-*Perry* case holding that a vindictive prosecution is unconstitutional is *United States v. Gerard,* 491 F.2d 1300 (9th Cir. 1974). With general regard to cases in which *Perry* has been cited, it may be said that some of them involved purely *Perry* problems; others involved primarily *Pearce* problems, and some involved both *Pearce* and *Perry* problems. Some of the cases were complicated by double jeopardy claims; however, no such claim is involved in the instant case.

4. It will be remembered that the defendant was indicted originally in No. 26 with possession of over 4,000 PCP tablets with intent to distribute them. Had the November, 1975 distribution charge been coupled in No. 26 with the possession charge, as defendant now contends should have been done, and had the jury heard in the trial of that case the entire body of evidence that the jury heard in the second trial, the likelihood is great that the defendant would have been convicted not only of the distribution of the MDA but also with felony possession of the PCP.

■ Further, in its opinion overruling the defendant's post-trial motion the district court found in effect that the prosecution of No. 128 was not vindictive, and we cannot say that the finding was clearly erroneous.

### III. Exclusion of Portion of Wife's Testimony.

The defendant called his wife to the stand as a witness, and she was permitted to testify in detail as to events relevant to the possession charge against the defendant. In connection with the distribution charge she was asked to relate what she had heard of the conversation between Faircloth, the defendant, and Skunberg on the evening of November 12, 1975.

Counsel for the government objected to the question on the ground that it called for hearsay evidence, and the district court sustained the objection.

Thereafter, the defendant took the stand and described in detail his version of the conversation. Presumably had his wife been permitted to testify about the conversation, her version of it, or the portion of it that she claimed to have overheard, would have been substantially the same as her husband's version.

■ We think that the action of the district court in refusing to permit the wife to testify about the conversation was error. The statements made by the husband were not self-serving declarations about a past attitude or state of mind, but were manifestations of his present state of mind, his immediate reaction to the proposal of Faircloth. As such, we think that they were admissible. See Fed.R.Evid. 803(3).

■ However, we are satisfied that the error was not such as to call for reversal. At most, the testimony of the wife would have been cumulative to and corroborative of the testimony of the husband. It was for the jury to say whether it believed the defendant's testimony and what weight it would give to that testimony. Considering the relationship between Mr. and Mrs. Partyka, and her obvious interest in her husband, there is no reason to think that the jury would have accepted defendant's testimony if corroborated by that of his wife but would not have accepted it if uncorroborated by her. Moreover, even if the jury believed the defendant with respect to the conversation, which the jury was not required to do, it would not follow that he was unlawfully entrapped into the actual commission of the offense two days after the conversation occurred.

### IV. Improper Arguments of Government Counsel.

Counsel on both sides made strong closing arguments to the jury. At the conclusion of all of the arguments defense counsel moved for a mistrial on the basis of certain statements made by government counsel. That motion was not granted. The defendant contends here that three or four statements made by government counsel were so improper and prejudicial as to call for a reversal of both convictions and for a new trial.

■ We have gone over the arguments made by opposing counsel. The question of the propriety of statements made by counsel in argument is one that addresses itself primarily to the discretion of the trial judge. Judge Larson did not feel that a mistrial was required. In our opinion he did not abuse his discretion in that connection, and we find this claim of the defendant, as well as his others, to be without merit.

The judgments in both cases are affirmed.