# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1748

_____

United States of America

*Plaintiff - Appellee*

v.

Arthur James Chappell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 8, 2014
Filed: March 11, 2015

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

On September 15, 2010, a jury convicted Arthur James Chappell of sex trafficking an underage female in violation of 18 U.S.C. § 1591 based on his recruitment and prostitution of CB, a seventeen-year-old high school student. See United States v. Chappell, 665 F.3d 1012, 1013-14 (8th Cir. 2012). Exercising our discretion on appeal to notice plain error in one of the jury instructions, see Fed. R. Crim. P. 52(b), we "reverse[d] and remand[ed] for a new trial." Chappell, 665 F.3d

at 1015. On remand, the government secured an eleven-count superseding indictment, charging Chappell with sex trafficking CB and AW, another underage female prostitute; possessing and producing child pornography; and various prostitution transportation charges. Claiming vindictive prosecution, Chappell moved to dismiss all but the original count of sex trafficking. After the district court[1] denied the motion, a second jury convicted Chappell on all counts. Chappell again appeals, and we affirm.[2]

## I.  BACKGROUND

In June 2007, the Bloomington, Minnesota, Police Department received a complaint from the manager of a local hotel who suspected prostitution was occurring in a room registered to Chappell. Already suspicious of the scantily clad young women she saw staying in the room and the large volume of male visitors daily, the manager called the police after identifying one of her hotel rooms in what she believed was an illicit personal advertisement on Craigslist.

Acting on the manager's complaint, Detective Judson Broen identified similar advertisements on the erotic services and adult sections of Craigslist and the website Backpage. The ads depicted young women suspected of performing acts of prostitution in the area, including at least one young woman seen occupying Chappell's room. As part of the investigation, the police interviewed the hotel staff and began conducting surveillance at the hotel from an unmarked vehicle.

On June 20, 2007, Detective Broen observed Chappell enter the hotel parking lot in a silver Dodge Durango. Three young women exited Chappell's vehicle and entered the hotel through a side entrance. Detective Broen recognized two of the

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

[2]28 U.S.C. § 1291 provides appellate jurisdiction.

three from photographs in the illicit advertisements. Detective Broen followed the Durango as it left the hotel, confirmed Chappell was driving, and arranged for a marked vehicle to stop Chappell. After Detective Broen and a uniformed officer arrested and searched Chappell and his passenger, another officer impounded and searched the Durango. The officers seized $5,738 in cash, false identification for Chappell, the credit card used to pay for the hotel room, and a "trick note"—a piece of paper containing the aliases of prostitutes in the case, dollar amounts, and the names and contact information of their customers.

The police released Chappell, but the investigation continued. On July 3, 2007, a team of officers executed a search warrant at a private residence Chappell rented. Chappell, CB, and two other suspected prostitutes were there. The police seized $3,811 in cash and additional evidence of prostitution, including a digital camera and laptop computers containing pornographic images of CB and others.

On May 19, 2009, a grand jury indicted Chappell for sex trafficking CB knowing she was a minor, in violation of 18 U.S.C. § 1591. Before trial, Chappell moved to suppress the evidence seized following his June 20, 2007, arrest. Adopting the report and recommendation of the magistrate judge, the district court denied Chappell's motions.

At trial, CB initially struggled to identify Chappell, but later testified he persuaded her to prostitute for him despite knowing she was just seventeen. CB reported Chappell often picked up CB and AW, then just sixteen, from high school and took them to the hotel to work as prostitutes—CB's testimony was corroborated by other witnesses. On cross-examination, CB admitted she had lied to Chappell and the police, but maintained Chappell had been her pimp knowing she was just seventeen.

The jury found Chappell guilty on September 15, 2010. Chappell moved for a new trial based on ineffective assistance of counsel. The district court denied the motion, explaining Chappell's trial counsel had been very effective, particularly with respect to impeaching CB's and AW's credibility. On March 16, 2011, the district court entered judgment and sentenced Chappell to 336 months imprisonment. Chappell appealed, and this court reversed and remanded for a new trial based on a faulty jury instruction. See Chappell, 665 F.3d at 1015.

On remand, a second grand jury—at the request of a different prosecutor—returned an eleven-count superseding indictment against Chappell, charging additional crimes against different victims. In addition to charging Chappell with sex trafficking CB in violation of 18 U.S.C. § 1591, the superseding indictment charged Chappell with sex trafficking AW (count 2); possessing and conspiring to possess child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), (b)(2) (counts 3 and 4); conspiring to produce child pornography in violation of 18 U.S.C. § 2251(a), (e) (count 5); enticing and transporting HB and RN to engage in prostitution in violation of 18 U.S.C. §§ 2422(a), 2421, and 2 (counts 6 through 9); and conspiring to entice and transport an individual to engage in prostitution, in violation of 18 U.S.C. §§ 2422(a), 2421, and 371 (counts 10 and 11).

Chappell moved to strike counts 2 through 11 of the superseding indictment for vindictive prosecution. Initially, the magistrate judge granted Chappell's request for an evidentiary hearing at which Chappell expected to call the prosecutors as witnesses. The government objected, averring the additional charges were not vindictive but involved "new and different offenses" and were compelled by changed circumstances. The government explained it obtained a superseding indictment because (1) Chappell rejected a plea agreement on remand, (2) the government had "new" evidence, and (3) Chappell's effective impeachment of CB at the first trial required a different trial strategy.

-4-

Substituting oral argument for an evidentiary hearing, the magistrate judge concluded the rebuttable presumption of vindictiveness from North Carolina v. Pearce, 395 U.S. 711 (1969), and Blackledge v. Perry, 417 U.S. 21 (1974), compelled dismissal of counts 2 through 11. The magistrate judge decided the government, by objecting to an evidentiary hearing, had frozen the record and failed to rebut the presumption with record evidence. Rejecting the government's proposal to make a proffer or submit affidavits if necessary, the magistrate judge recommended the district court grant Chappell's motion.

On the government's objection, the district court declined to adopt that recommendation, concluding "the context and objective circumstances d[id] not present a reasonable likelihood of vindictiveness." Noting "seven of the ten new counts pertain[ed] to different events involving different victims" and the other three new counts "relate[d] to entirely different events and conduct" than count 1, the district court reasoned Blackledge did not deprive the government of its traditional prosecutorial discretion on remand. The district court also noted the government did not substitute "a more serious charge for the original charge" of sex trafficking under count 1.

The district court further concluded, even if the presumption of vindictiveness applied, the government had given "sufficient legitimate, non-vindictive reasons . . . to rebut the presumption." Specifically, the district court emphasized CB "had been effectively cross-examined and possibly discredited during the original trial" based on "credibility and recollection problems that surfaced" at trial. The district court decided those problems supported the new prosecutor's strategy of bringing additional charges that did not depend on CB's credibility and memory. The district court also noted the record indicated AW only admitted she was a victim of sex trafficking a few days before the first trial, preventing the government from obtaining a superseding indictment before trial.

On October 9, 2012, Chappell went to trial for the second time. On October 24, 2012, the jury convicted Chappell of every count charged. After a sentencing hearing, the district court again sentenced Chappell to a total term of 336 months imprisonment. Chappell timely appealed.[3]

## II.   DISCUSSION
### A.   Probable Cause to Arrest

Before his first trial, Chappell moved to suppress evidence derived from his arrest in Bloomington based on Chappell's claim the police lacked probable cause to arrest him. The district court denied Chappell's motions. On remand, Chappell sought to reopen the suppression issue "based upon new facts brought forth at trial" through Detective Broen's testimony regarding the investigation and his prior knowledge of Chappell.

After hearing argument at trial and ordering supplemental briefing, the district court denied Chappell's motion, concluding "[t]he record d[id] not support a reopening of the issue." Explaining that, "even if the record were reopened, it would be to put testimony on that has already been adduced either at the suppression hearing or items of probable cause that have come out through the testimony of other witnesses," the district court reiterated "[t]here [wa]s no doubt, based on the entire record, that the arrest . . . was in fact supported by probable cause."

---

[3]Though represented by counsel, Chappell, acting pro se, moves this court to accept additional evidence on appeal and requests leave "to file an oversize pro se supplemental brief" and a "pro se supplemental reply brief." After carefully reviewing the requests, we deny Chappell's motions because we see no reason to deviate from our policy of "'refus[ing] to consider pro se filings when a party is represented by counsel.'" United States v. Martin, 59 F.3d 767, 768 n.2 (8th Cir. 1995) (quoting Hoggard v. Purkett, 29 F.3d 469, 472 (8th Cir. 1994)).

Chappell contends the district court abused its discretion in refusing "to reconsider whether probable cause existed to support his warrantless arrest" on June 20, 2007. See United States v. Chavez Loya, 528 F.3d 546, 555 (8th Cir. 2008) (standard of review). In Chappell's view, the district court should have dismissed the superseding indictment because Detective Broen lacked probable cause to arrest him and the evidence obtained thereafter was "fruit of the illegal arrest" under Wong Sun v. United States, 371 U.S. 471, 488 (1963). Chappell raises two issues on this point: whether the district court erred in (1) failing to reopen the record on the question of probable cause, and (2) deciding probable cause supported the arrest. Neither issue has merit.

First, Chappell's "new facts" fall far short of showing the district court abused its discretion in denying Chappell's motion to reopen based on Detective Broen's trial testimony. Chappell's vague references to Detective Broen's testimony about the probative value of online advertisements in other cases and the hotel staff's *post-arrest* inability to identify Chappell from a photographic lineup[4] do little, if anything, to undermine the district court's thorough suppression analysis. See United States v. Kelly, 329 F.3d 624, 628 (8th Cir. 2003) ("To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers *at the time of arrest*." (emphasis added)). And we fail to see how Detective Broen's testimony that he did not forget Chappell from an "ongoing [prostitution] investigation" of Chappell from August 2006, but did not make any reports or notes about him until Chappell resurfaced in Bloomington in 2007, somehow invalidated Detective Broen's testimony and "dispelled probable cause for the June 20, 2007 arrest," as Chappell contends.

---

[4]Without any record support, Chappell asserts the photographic lineup preceded his June 20, 2007, arrest. At trial, Detective Broen testified he followed up with the hotel employees on June 28, 2007—eight days after the arrest.

Second, even if the issue were reopened, we agree with the district court that the police had probable cause to arrest Chappell. "We review *de novo* the district court's determination of probable cause and its factual findings for clear error." United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005). "An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007).

> Arresting officers are not required to witness actual criminal activity or have collected enough evidence so as to justify a conviction for there to be a legitimate finding of probable cause to justify a warrantless arrest. Instead, the mere "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity," is all that is required.

United States v. Winarske, 715 F.3d 1063, 1067 (8th Cir. 2013) (quoting Mendoza, 421 F.3d at 667). Recognizing "the police possess specialized law enforcement experience and thus may 'draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous,'" Mendoza, 421 F.3d at 667 (quoting United States v. Caves, 890 F.2d 87, 94 (8th Cir. 1989)), we afford the police "'substantial latitude in interpreting and drawing inferences from factual circumstances,'" Winarske, 715 F.3d at 1067 (quoting United States v. Henderson, 613 F.3d 1177, 1181 (8th Cir. 2010)).

Here, the facts and circumstances provided probable cause to arrest Chappell for promoting prostitution. Detective Broen testified he first suspected Chappell of being involved in the promotion of prostitution in connection with an investigation in August 2006. In June 2007, the police received a detailed complaint of suspected prostitution in a local hotel room Chappell rented. Sharing their suspicions about the unusual activity at the hotel, the hotel staff provided the police with illicit

-8-

advertisements depicting the hotel and some of the young women using Chappell's room. The staff further reported seeing Chappell interacting with the young women the staff believed were prostitutes, taking money from them, and transporting them to and from the hotel in a large, silver sport utility vehicle (SUV).

After confirming the online ads from the hotel staff were still active and finding similar ads routinely used to promote prostitution, Detective Broen began surveillance at the hotel in an unmarked car. On June 20, 2007, Detective Broen observed a silver Dodge Durango SUV arrive at the hotel. Three women exited, two of whom Detective Broen recognized from the online advertisements. When the Durango left the parking lot, Detective Broen followed. Pulling alongside the Durango, Detective Broen confirmed Chappell was driving by comparing the driver to file photographs of Chappell. Detective Broen then arranged for an officer in a marked patrol car to stop the Durango, and together they arrested Chappell. On this record, probable cause supported Chappell's arrest.

## B. Vindictive Prosecution
### 1. Standard of Review

Chappell next argues "the district court erred when it denied Mr. Chappell's motion to dismiss Counts 2-11 of the Superseding Indictment for vindictive prosecution." Before considering the merits of Chappell's vindictive prosecution claim, we must first address "some confusion as to the proper standard of appellate review of district court determinations of vindictive prosecution." United States v. Leathers, 354 F.3d 955, 962 n.4 (8th Cir. 2004); accord United States v. Campbell, 410 F.3d 456, 461 & n.2 (8th Cir. 2005) (acknowledging the confusion and deciding the defendant could not "succeed under any . . . standard[]"). As noted in Leathers, we have applied different standards of appellate review to different questions arising from allegations of vindictive prosecution. See Leathers, 354 F.3d at 962 n.4 (comparing United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001), in which we reviewed de novo the denial of a motion to dismiss a criminal indictment for

vindictive prosecution, with United States v. Kelley, 152 F.3d 881, 885-86 (8th Cir. 1998), in which we reviewed the denial of an evidentiary hearing regarding vindictive prosecution for abuse of the trial court's discretion).

In Leathers, we explained, "Because a finding of vindictiveness *vel non* can only be made on the basis of evidence pertaining to the prosecutor's motives, we treat the question as one of fact and thus review the District Court's ruling for clear error." Leathers, 354 F.3d at 961-62 (citing United States v. Parham, 16 F.3d 844, 846 (8th Cir. 1994)). That conclusion follows our earliest vindictive prosecution decisions. See, e.g., United States v. Stacey, 571 F.2d 440, 444 (8th Cir. 1978) (upholding the trial court's refusal to dismiss the indictment because the trial court's factual finding that the criminal prosecution "was not retaliatory in nature" was not "clearly erroneous"); cf. Thompson v. Armontrout, 808 F.2d 28, 31 (8th Cir. 1986) ("We note that the district court's findings as to vindictiveness are findings of fact, which we can set aside only if 'clearly erroneous.'" (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985))). In United States v. Partyka, 561 F.2d 118, 124-25 (8th Cir. 1977), one of our first cases analyzing a vindictive prosecution claim, we reviewed legal questions de novo and reviewed the trial court's factual finding "that the prosecution . . . was not vindictive" for clear error. When the trial court's discretionary decisions, such as whether to allow discovery or hold an evidentiary hearing, are at issue, we review for abuse of discretion. See, e.g., Wayte v. United States, 470 U.S. 598, 624 (1985).

Evidently unaware of these cases, Chappell, relying exclusively on United States v. Scott, 610 F.3d 1009, 1017 (8th Cir. 2010), urges us to review the district court's denial of his motion to dismiss for abuse of discretion. But Chappell does not challenge any discretionary decisions—meaning, Chappell's proposed standard does not apply to the issues he raises on appeal. Following our precedent, we review the district court's legal conclusions de novo and its factual findings for clear error. See Leathers, 354 F.3d at 961-62; Partyka, 561 F.2d at 124-25.

-10-

### 2. Merits

Due process prohibits a vindictive prosecutor from punishing a criminal defendant solely for exercising "his statutory right to appeal by bringing a more serious charge against him prior to the trial *de novo*." Blackledge, 417 U.S. at 29. "In order to demonstrate prosecutorial vindictiveness, a defendant must show that the superseding indictment containing the additional charges was sought in retaliation for exercising constitutional or statutory rights." United States v. Punelli, 892 F.2d 1364, 1371 (8th Cir. 1990). A defendant can prove such impermissible prosecutorial vindictiveness with objective evidence of the prosecutor's "vindictive or improper motive" in increasing the number or severity of charges. Leathers, 354 F.3d at 961.

Absent such evidence, "a defendant may, in *rare* instances, rely upon a presumption of vindictiveness," Kriens, 270 F.3d at 602 (emphasis added), if he provides sufficient evidence to show "'a reasonable likelihood of vindictiveness exists,'" United States v. Rodgers, 18 F.3d 1425, 1429-30 (8th Cir. 1994) (quoting United States v. Goodwin, 457 U.S. 368, 373 (1982)). "The defendant's evidentiary burden is a heavy one, and we are mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes." Leathers, 354 F.3d at 961; see also Partyka, 561 F.2d at 124 ("[W]e do not read [Blackledge] as taking away from prosecutors their traditional and proper discretion in deciding which of multiple possible charges against a defendant are to be prosecuted or whether they are all to be prosecuted at the same time.").

"To determine whether the presumption of vindictiveness applies, 'the court must examine the prosecutor's actions in the context of the entire proceedings.'" United States v. Saltzman, 537 F.3d 353, 359-60 (5th Cir. 2008) (quoting United States v. Krezdorn, 718 F.2d 1360, 1365 (5th Cir. 1983) (en banc)). Because a vindictive prosecution "claim asks a court to exercise judicial power over a 'special province' of the [President and his delegates to enforce the law]," United States v.

Armstrong, 517 U.S. 456, 464 (1996) (quoting Heckler v. Chaney, 470 U.S. 821, 832 (1985)), "'[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties,'" id. (alteration in original) (quoting United States v. Chem. Found., Inc., 272 U.S. 1, 14-15 (1926)).

Chappell states he does not allege "intentional vindictiveness on the part of [the new prosecutor]." Rather, he argues the district court failed to consider relevant factors and erred in concluding the presumption of vindictiveness did not apply given the timing of events in his case. According to Chappell, there was "a reasonable likelihood of vindictiveness" because the superseding indictment was based on the same underlying facts as the original indictment and "the only change in the intervening facts w[as] Mr. Chappell's victory on appeal after the first trial." Chappell asserts the district court was "wrong on the facts," thus its conclusion that the objective circumstances did not warrant a presumption of vindictiveness had "no factual basis." In Chappell's view, "[a]dding additional and more severe counts" that the government could have charged earlier—following a successful appeal—automatically "triggers the presumption of vindictiveness," even if the additional charges are "unrelated" to the original charges or involve different victims and events and distinct criminal conduct. Chappell's arguments are unpersuasive.

Having thoroughly reviewed the record, we detect no clear error in the district court's factual findings and agree with the district court that "the context and objective circumstances do not present a reasonable likelihood of vindictiveness." As the district court observed, on remand, a different prosecutor[5] added counts

_____

[5]See Holloway v. Lockhart, 754 F.2d 252, 254 (8th Cir. 1985) (per curiam) (rejecting a vindictive prosecution claim in part because "the case was handled by a different prosecutor"); United States v. Wilson, 262 F.3d 305, 319-20 (4th Cir. 2001) (same). But cf. Thigpen v. Roberts, 468 U.S. 27, 31 (1984) (observing the presumption "arises in part from assumptions about the individual's personal stake

-12-

2 through 11 after Chappell's counsel effectively had impeached the credibility of CB—the minor victim of count 1 and the government's principal witness at the first trial—by getting CB to admit she was a liar after she initially struggled to identify Chappell for the jury. Chappell's effective impeachment of CB's credibility played a key part in the first trial, the district court's denial of his motion for a new trial, and this court's decision to reverse Chappell's conviction and remand for a new trial based on an improper jury instruction as to Chappell's requisite knowledge of CB's age. See Chappell, 665 F.3d at 1015. Those circumstances objectively justified additional charges on remand. See Punelli, 892 F.2d at 1372 (deciding there was no presumption of vindictiveness after a mistrial in part because "the government sought the superseding indictment because of evidence elicited in the first trial"); Partyka, 561 F.2d at 124 (recognizing actions at trial justify different charging decisions on remand); accord United States v. Perez, 79 F.3d 79, 81 (7th Cir. 1996) ("We had reversed [the defendant's] first conviction because of an error in the instructions, . . . mak[ing] it more difficult for the government to convict him of this charge, and so the government prudently added a second, lesser charge, as to which it had Perez cold. This it seems to us was reason enough for the district judge to find that the addition of the new charge was not intended to teach people in [the defendant's] position not to appeal.").

Although he quibbles with the district court's understanding of the charged conduct, Chappell concedes the new charges were based on different criminal acts, mostly against different victims. Without more, "adding new charges based on independent acts, 'even where the separate acts that prompted the new charges occurred in the same spree of activity,' does not create a presumption of prosecutorial vindictiveness." United States v. Kendrick, 682 F.3d 974, 982 (11th Cir. 2012) (quoting United States v. Jones, 601 F.3d 1247, 1261 n.5 (11th Cir. 2010)); accord

in the proceedings," but declining to decide whether the presumption is inappropriate when "two independent prosecutors are involved").

United States v. Peoples, 360 F.3d 892, 894, 896 (8th Cir. 2004); Partyka, 561 F.2d at 124.

In addition, "[t]here can be no prosecutorial vindictiveness if the prosecutor revised the charge because of newly discovered evidence or some objective reason other than to punish the defendant for exercising his legal rights." Campbell, 410 F.3d at 462. With respect to count 2, the trial record established AW did not tell the police she had worked as an underage prostitute for Chappell until a few days before the first trial—too late for the government to seek a superseding indictment to add a second count of sex trafficking a minor. Chappell insists "there was no newly discovered evidence" because the government was aware AW was a victim before Chappell's first trial and successful appeal. But we have not construed that phrase so narrowly in this context. See id. at 462; Rodgers, 18 F.3d at 1431 (rejecting a prosecutorial vindictiveness claim when the government added a charge based on evidence discovered "*shortly before* or after the first trial" and saying "there was not enough time to seek a superseding indictment before the first trial" (emphasis added)).

We also reject Chappell's unsupported assertions that timing alone "gives rise to a reasonable likelihood of vindictiveness" and "[t]he presumption applies whenever the prosecution has knowledge of the facts essential to the other charges at the time of the original indictment, trial, and conviction." See Goodwin, 457 U.S. at 384 ("[A] mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule."). Chappell's expansive reading of Blackledge is directly at odds with our precedent. See, e.g., Campbell, 410 F.3d at 462 ("A presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness.").

Although a rebuttable presumption of vindictiveness *may* arise when prosecutors increase the number or severity of charges, "[i]f any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision to increase the severity of charges was motivated by some purpose other than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created."

Punelli, 892 F.2d at 1371 (alteration in original) (emphasis added) (quoting Krezdorn, 718 F.2d at 1365); accord Campbell, 410 F.3d at 461-62. Such is the case here. See, e.g., Punelli, 892 F.2d at 1372 (refusing to "disturb the district court's finding that no presumption of vindictiveness arose" where "[t]he objective circumstances indicate[d] the prosecutor's decision to reindict was motivated by some purpose other than a vindictive desire to punish [the defendant's] exercise of his right to appeal"). "[A] reasonable minded defendant should have appreciated that the prosecutor's actions were taken to pursue a course indicated by the appellate opinion rather than to impose a penalty on [the defendant] for having exercised his right of appeal." Krezdorn, 718 F.2d at 1365.

In contrast, Chappell's broad interpretation of Blackledge would deprive the prosecutor of any discretion on remand.

[W]e do not think that [Blackledge] holds that if at a given moment a prosecutor is in a position to indict a defendant on two separate felony charges growing out of different events he must indict on both charges at the same time unless he cares to assume the risk that if a prosecution on one charge only aborts as a result of defense efforts, it will be held that he has been guilty of vindictive prosecution if he promptly obtains an indictment on the other charge.

Partyka, 561 F.2d at 124. Chappell has failed to adduce any evidence suggesting an improper motive on the part of the prosecutor or showing "a reasonable likelihood of vindictiveness," Goodwin, 457 U.S. at 373, under the facts and circumstances of this

case. The district court did not err in denying Chappell's motion to dismiss counts 2 through 11. See Campbell, 410 F.3d at 462. Chappell's contingent argument that he deserves a new trial on count 1 because the district court improperly admitted evidence related to counts 2 through 11 likewise fails.[6]

## III.  CONCLUSION

We affirm the well-reasoned judgment of the district court.

———————————————

———————————————

[6]Because we conclude the district court did not err in concluding the facts and circumstances of this case did not warrant a presumption of vindictiveness, we need not consider Chappell's various challenges to the district court's conclusion "that even if the presumption of prosecutorial vindictiveness did apply under these factual circumstances, the Government has proffered sufficient legitimate, non-vindictive reasons . . . to rebut the presumption."