# United States Court of Appeals

### For the Eighth Circuit

_____

No. 14-2949

_____

United States of America

*Plaintiff - Appellee*

v.

Reginald Bernard Williams

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 12, 2015
Filed: July 20, 2015

_____

Before GRUENDER, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Reginald Williams appeals the district court's denial of his motion to suppress physical evidence obtained from searches of Williams' rental car and motel room, and

argues that the district court[1] erred in failing to dismiss sua sponte the superseding indictment for vindictive prosecution. We affirm.

## I. BACKGROUND

On September 13, 2012, Williams was arrested in the parking lot of a Days Inn motel in Hazelwood, Missouri. Williams' arrest came as a result of a sting operation in which law enforcement from several jurisdictions attempted to locate a missing minor female from Illinois, who police believed was being prostituted online. As a result of Williams' arrest, officers searched Williams' motel room where they found the missing minor female as well as a second minor female, condoms, and cellular phones, including a phone that a police officer acting undercover called earlier that day to arrange a paid "date" with the minor females.

After Williams was in handcuffs, St. Louis County detective Michael Slaughter approached Williams, told him he was being arrested on the charge of promoting prostitution, and read Williams his Miranda[2] rights. Detective Slaughter testified that Williams stated he understood these admonitions and agreed to waive his right not to speak to the detective. Williams asked Slaughter if his rental car, which was in the Days Inn parking lot, would be towed, and if he could remove some belongings from the vehicle. Slaughter asked Williams if there was anything illegal in the vehicle, and Williams responded that he had a registered firearm in the vehicle and gave Slaughter verbal consent to search the vehicle. Williams watched the search being conducted, and at no time communicated that he wanted to stop the search. Police found several items in the cabin and trunk of the vehicle, including a firearm, condoms, and the

---

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Nannette A. Baker, United States Magistrate Judge for the Eastern District of Missouri.

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

following electronic devices: a laptop computer, a digital camera, an external hard drive, a memory card and various DVDs and CD-rom disks.

Williams was subsequently transported to the St. Louis County police headquarters, where Slaughter and FBI agent Nikki Badolato interviewed him. During the interview, which was recorded, Slaughter summarized his contact with Williams prior to the start of the interview and stated that Williams had already been read his Miranda rights. Williams acknowledged and agreed with Slaughter's statements. Later in the interview, Slaughter asked Williams for consent to search the electronic devices recovered during Williams' arrest, and Williams voluntarily consented. Following this consent, and while the interview was ongoing, officers searched Williams' electronic devices. At no point during the interview did Williams withdraw his consent to search the electronic devices. A number of times during the interview Slaughter and Badolato left the room and then reentered to continue their questioning of Williams using information gathered from the search of the devices. More than five and a half hours into the interview, officers asked Williams for written consent to search the electronic devices, in order to memorialize the verbal consent Williams previously provided. Williams refused to sign the written consent-to-search, and requested a lawyer. The officers immediately stopped questioning Williams and terminated the interview. Officers subsequently secured search warrants for the electronic devices and storage disks found in Williams' rental car, and for the cellular phone found in Williams' motel room.

Williams later filed motions to suppress the physical evidence obtained as a result of his arrest, and the statements he made during the recorded interview. Williams argued that he did not consent to the officers' search of his rental vehicle; that he was not advised of, nor waived, his Miranda rights at the time of the interview; and that prior to the start of the recorded interview, Williams requested to call an attorney and that Slaughter coerced his statement by threatening to charge

Williams with obstruction of justice if Williams did not agree to speak with the officers.

Williams was arraigned by a magistrate judge who, after a hearing on the motions to suppress, issued a written report and recommendation suggesting that Williams' motions to suppress be denied. Williams filed general objections to the magistrate judge's report, but after de novo review of the record, the district court adopted the report and recommendation. Williams filed second motions to suppress. After a second evidentiary hearing, the magistrate judge issued a second report and recommendation, again recommending denial of the motions to suppress. Williams did not file objections to the second report and recommendation.[3] The district court, after de novo review, entered an order adopting the magistrate judge's second report and recommendation and denying Williams' motions to suppress.

On October 3, 2012, Williams was indicted by a grand jury on one count of interstate transportation of a minor with intent to engage in prostitution, in violation of 18 U.S.C. § 2423(a). The government subsequently offered a guilty plea for Williams on three counts, which Williams rejected. On July 24, 2013, the grand jury returned a superseding indictment against Williams on five counts, including: Count 1, the original charge; Count 2, sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1); Count 3, attempted sex trafficking of a minor, in violation of 18 U.S.C. § 1591(a)(1); Count 4, possession of a firearm in furtherance of sex trafficking, in violation of 18 U.S.C. § 924(c)(1)(A); and Count 5, using interstate facilities to promote prostitution, in violation of 18 U.S.C. § 1952(a)(3). Some months later, the government offered Williams a second plea deal, which Williams likewise declined. No additional charges were added after Williams' rejection of the second plea deal.

---

[3]Additionally, at trial, evidence seized from Williams' rental vehicle and motel room–the physical evidence Williams sought to suppress–was offered by the government and admitted without objection from the defense.

The case proceeded to a jury trial, and the jury returned a guilty verdict against Williams on all five counts. Williams appeals, arguing that the district court erred in denying his motion to suppress the physical evidence and erred in failing to dismiss sua sponte the superseding indictment for vindictive prosecution.

## II.    DISCUSSION

### A.    Standard of Review

Ordinarily, when reviewing a denial of a motion to suppress, we evaluate the district court's findings of fact for clear error and review de novo the ultimate conclusion of whether the Fourth Amendment was violated. United States v. Rodriguez, 484 F.3d 1006, 1010 (8th Cir. 2007). However where, as here, the defendant failed to object to the magistrate judge's report and recommendation denying defendant's motions to suppress, we review the court's factual determinations for plain error. Id. at 1010-11. Similarly, Williams failed to raise the issue of vindictive prosecution in the district court. Thus, we also review the district court's failure to dismiss the superseding indictment sua sponte for plain error. See United States v. Thornberg, 676 F.3d 703, 706 (8th Cir. 2012) (stating that an error, "even one affecting a constitutional right," is forfeited, and thus subject to plain error review, if it is not timely asserted). Under plain error review, the defendant must show that "(1) the district court committed an error, (2) the error is clear or obvious, and (3) the error affected his substantial rights." Id. (quotation omitted). Additionally, we have discretion to correct a forfeited error, and we will only do so if the "error seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted).

## B.    Motion to Suppress

Williams argues that the district court plainly erred in denying his motion to suppress the physical electronic evidence because his consent to search was coerced and the later-obtained search warrant would not have been obtained absent the illegal police behavior.  Williams testified at the suppression hearing that he asked for a lawyer prior to the start of the recorded interview, and that he would not have agreed to make a statement to police if Slaughter had not allegedly told him that he would be charged with obstruction of justice. Slaughter testified at the hearing that Williams did not ask for counsel until just before the end of the interview, and that once Williams made the request the interview was terminated.  Slaughter also denied threatening to charge Williams with obstruction of justice if Williams refused to speak with police.

The magistrate judge, in her report and recommendation, found that based on the totality of the circumstances, Williams was given his <u>Miranda</u> rights and voluntarily and knowingly waived those rights.  The magistrate judge further credited Slaughter's testimony that Slaughter did not "use any threats against Williams in an attempt to elicit a confession."  However, the magistrate judge did not make an express finding as to whether or not Slaughter specifically made the alleged statements threatening to charge Williams with obstruction of justice. The magistrate judge also held that as a matter of law, Slaughter's alleged statements that Williams could be charged with obstruction of justice were possible charges based on the officers' investigation.[4]

---

[4]This was error.  The record does not support a finding that Williams' conduct preceding or following his arrest would qualify as obstruction of justice under the statute.  <u>See</u> 18 U.S.C. §§ 1501 et seq.  However, as our analysis below illustrates, this error does not impact the ultimate determination that Williams' statements were voluntary.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." United States v. LeBrun, 363 F.3d 715, 724 (8th Cir. 2004) (en banc) (quotation omitted). To determine whether a statement is voluntary we examine the totality of the circumstances, including the "conduct of the officers and the characteristics of the accused." Id. (quotation omitted). The magistrate judge's credibility determinations make clear that, based on the totality of the circumstances, Williams' statements were voluntary. "A credibility finding made by a magistrate judge after a hearing on the merits of a motion to suppress is virtually unassailable on appeal." United States v. Shafer, 608 F.3d 1056, 1065 (8th Cir. 2010) (internal quotation omitted). The magistrate judge resolved the contested issue of the voluntariness of Williams' consent to search by finding that Slaughter's testimony was credible. We find no error with these credibility determinations, and thus the magistrate judge did not plainly err in recommending denial of Williams' motions to suppress.

Williams also argues that it is necessary to remand the issue of Williams' motion to suppress the physical evidence because the district court failed to make specific factual findings regarding the obstruction of justice threats. While the magistrate judge could have made her factual findings regarding whether Slaughter threatened to charge Williams with obstruction of justice more explicit, there is no question that she found Slaughter did not make such statements. Slaughter testified that he did not threaten to charge Williams with obstruction of justice if Williams refused to speak with police, and the magistrate judge credited Slaughter's testimony that he "did not use any threats against Williams in an attempt to elicit a confession." Thus, it is not necessary to remand for further fact-finding. However, even if Slaughter did make a statement threatening to charge Williams with obstruction of justice, such a threat would not automatically render Williams' statements involuntary. Cf. LeBrun, 363 F.3d at 725 (holding that a promise made by police does not render a confession involuntary per se). Indeed, "whatever the facts of an

individual case, our polestar always must be to determine whether or not the authorities overbore the defendant's will and critically impaired his capacity for self-determination. Thus, it is not enough to show that the authorities' representations were the but-for cause of a confession." Id. Williams presents no objective evidence that, based on the totality of the circumstances, the officers' statements overbore Williams' will and capacity for self-determination. Accordingly, the magistrate judge's ultimate determination that Williams' statements were voluntary was not plain error.

## C.    Vindictive Prosecution

Vindictive prosecution occurs when a prosecutor seeks to punish a defendant solely for exercising a valid legal right. United States v. Leathers, 354 F.3d 955, 961 (8th Cir. 2004). Such prosecution constitutes a violation of due process. Id. The defendant has the burden to demonstrate that the "prosecution was brought in order to punish [him] for the exercise of a legal right," and because of the broad discretion given to prosecutors in performing their duties, the defendant's burden to show vindictive prosecution is "a heavy one." Id. Williams argues that the prosecution sought to punish him for exercising his legal right to a trial when the government filed the five-count superseding indictment following Williams' refusal of the government's plea deal.

A defendant can establish prosecutorial vindictiveness through two methods; first, with "objective evidence of the prosecutor's vindictive or improper motive in increasing the number or severity of charges." United States v. Chappell, 779 F.3d 872, 879 (8th Cir. 2015) (internal quotation omitted). "Absent such evidence, a defendant may, in *rare* instances, rely upon a presumption of vindictiveness, if he provides sufficient evidence to show a reasonable likelihood of vindictiveness exists." Id. (alteration in original) (internal quotation omitted). In determining whether the

presumption of vindictiveness applies we examine "the prosecutor's actions in the context of the entire proceedings." Id. at 880 (quotation omitted).

Williams fails to prove prosecutorial vindictiveness under either approach. First, Williams offers no objective evidence in the record that the prosecutor filed the superseding indictment in order to punish Williams for exercising his right to a trial. Second, the circumstances surrounding the plea deals and the superseding indictment do not establish a reasonable likelihood of vindictiveness, so no presumption of vindictiveness is warranted. Williams' primary, if only, argument on appeal is that the timing of the superseding indictment demonstrates vindictiveness, but timing alone is insufficient to trigger the presumption of vindictiveness. United States v. Campbell, 410 F.3d 456, 462 (8th Cir. 2005). Indeed, "[a] presumption does not arise just because action detrimental to the defendant was taken after the exercise of the defendant's legal rights; the context must also present a reasonable likelihood of vindictiveness." Id. Williams provides no evidence–aside from the timing–to show the context of the proceedings present a reasonable likelihood of vindictiveness, and thus he fails to meet his heavy burden to establish prosecutorial vindictiveness. Accordingly, and especially under our standard of review, the district court did not plainly err by failing to dismiss the superseding indictment on its own.

## III.   CONCLUSION

For the aforementioned reasons, we affirm the denial of Williams' motion to suppress and deny Williams' claim of vindictive prosecution.

_____